## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEREDITH CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00257 RBW |
| | ) |
| HOME INTERIORS & GIFTS, INC., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF MEREDITH CORPORATION'S MOTION
## FOR PRELIMINARY INJUNCTION

Plaintiff Meredith Corporation ("Meredith"), by and through its undersigned counsel, hereby moves for a preliminary injunction against Defendant Home Interiors & Gifts, Inc. ("HIG"). The grounds for this motion are more fully set out in the accompanying memorandum of points and authorities, which is incorporated as if fully set forth herein.

In summary, Plaintiff Meredith's BETTER HOMES AND GARDENS® trademark is one of the most recognized and trusted brands in America. In addition, Meredith is the owner of the well-known "Plaid Checker Board" design mark, which it also uses to promote its goods and services. Plaintiff Meredith has licensed its BETTER HOMES AND GARDENS® trademark and the Plaid Checker Board design mark (together, the "Meredith Marks") to Defendant HIG for use on various home decorative products.

Without cause and in material breach of the license agreement, Defendant HIG has refused to honor its obligations under the license agreement. Among other things, Defendant HIG has failed to pay Meredith at least $1,000,000 it owes for royalty payments. As a result, Defendant HIG is no longer authorized or licensed to use the Meredith Marks, but nevertheless

continues to promote and sell merchandise branded under the Meredith Marks. As a matter of law, this unauthorized use infringes Meredith's trademark rights. Unless enjoined by this Court, this activity will irreparably injure Meredith and the goodwill associated with the Meredith Marks. Therefore, Plaintiff Meredith moves for a preliminary injunction enjoining Defendant HIG from, among other things, any further sales or promotion of merchandise under the Meredith Marks.

On April 1, 2008, Meredith counsel's spoke with HIG's counsel in a good faith effort to determine whether HIG opposes Meredith's motion for a preliminary injunction and, if opposed, whether the areas of disagreement could be narrowed. HIG's counsel advised Meredith's counsel that HIG will oppose the preliminary injunction motion.

WHEREFORE, Meredith respectfully requests that its motion for a preliminary injunction be granted.

Respectfully submitted,

Of Counsel

James G. Sawtelle          *by MDH*

Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414
Telephone: (303) 447-778
Facsimile: (303) 447-7800
jsawtelle@faegre.com

Michael D. Hays (D.C. Bar No. 932418)
Mitchell H. Stabbe (D.C. Bar No. 333427)

Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, D.C. 20036-6802
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
mhays@dowlohnes.com
mstabbe@dowlohnes.com

Counsel for Plaintiff Meredith Corporation

April 2, 2008

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Motion For Preliminary Injunction, together with the accompanying Memorandum Of Points and Authorities in support thereof, Declaration of David S. Johnson, and a proposed order were served on the following persons, at their said address, by electronic mail and by first class mail, this 2nd day of April, 2008:

Martin Lobel, Esq. (lobel@lnllaw.com)
Lee Ellen Helfrich, Esq. (helfrich@lnllaw.com)
Lobel, Novins & Lamont, LLP
888 17th St., N.W.
Suite 810
Washington, DC 20006

Scott M. Dewolf, Esq. (sdewolf@rhmlawyers.com)
Kathleen M. Patrick, Esq. (kpatrick@rhmlawyers.com)
Rochelle, Hutcheson & McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

Michael D. Hays

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEREDITH CORPORATION, )
)
Plaintiff, )
)
v. )       Case No. 1:08-cv-00257 RBW
)
HOME INTERIORS & GIFTS, INC., )
)
Defendant. )
)

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Upon consideration of the Motion for Preliminary Injunction of Plaintiff Meredith Corporation ("Meredith") against Defendant Home Interiors & Gifts, Inc. ("HIG"), the memoranda of points and authorities in support thereof and in opposition thereto, and the declarations and other evidence before the Court, it is, this ____ day of _____, 2008,

ORDERED:

1.     That Defendant HIG, its officers, agents, servants, affiliates, employees, attorneys, and representatives and all those in privity or acting in concert with Defendant HIG, and each and all of them, be enjoined and restrained from directly or indirectly:

(a)     using BETTER HOMES AND GARDENS, as a part of a trademark, service mark, or trade name alone or in combination with any words, names, designs, titles, or marks in connection with selling, offering, or advertising home decorative products or any other goods or services;

(b)     using BETTER HOMES AND GARDENS as part of a trademark, service mark, or trade name, or using any other mark or name confusingly similar to

BETTER HOMES AND GARDENS, in connection with any business which Defendant HIG conducts, owns, or controls;

(c)     holding itself out as the owner of, or a company authorized to use, as part of its name, BETTER HOMES AND GARDENS, or a name confusingly similar thereto;

(d)     using a plaid checkerboard design, as a part of a trademark or service mark alone or in combination with any words, names, designs, titles, or marks in connection with selling, offering, or advertising home decorative products or any other goods or services;

(e)     using a plaid checkerboard design as part of a trademark or service mark, or any other mark confusingly similar to a plaid checkerboard design, in connection with any business which Defendant HIG conducts, owns, or controls;

(f)     performing any actions or using any words, names, styles, titles, or marks that are likely to cause confusion, to cause mistake or to deceive; or to otherwise mislead the trade or the public into believing that Plaintiff Meredith and Defendant HIG are one and the same or are in some way connected; or that Plaintiff Meredith is a sponsor of Defendant HIG; or that Defendant HIG is in some manner affiliated or associated with or under the supervision or control of Plaintiff Meredith; or that the home decorative products or other goods or services of Defendant HIG originate with Plaintiff Meredith or are sold, promoted, or offered with the approval, consent, or authorization, or under the supervision of Plaintiff Meredith; or are likely in any way to lead the trade or the public to associate Defendant HIG with Plaintiff Meredith;

- 2 -

(g)     using any words, names, styles, titles, or marks which create a likelihood of injury to the business reputation of Plaintiff Meredith, or a likelihood of misappropriation or dilution of Plaintiff's BETTER HOMES AND GARDENS mark or Plaintiff's plaid checkerboard design mark and the goodwill associated therewith; and

(h)     using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and the goodwill attached thereto.

2.     That Defendant HIG be required to deliver up, at its expense, all home decorative products, catalogs, stationery, business forms, signs, advertisements, brochures, promotional materials, and other written materials which bear the infringing name or trademark BETTER HOMES AND GARDENS or the plaid checkerboard design or any name, mark, or design confusingly similar to Plaintiff's BETTER HOMES AND GARDENS mark or plaid checkerboard design mark, together with all plates, molds, matrices, and other means and materials for making or reproducing same.

IT IS SO ORDERED

_____
Honorable Reggie B. Walton
UNITED STATES DISTRICT JUDGE

Copies to:

Michael D. Hays, Esq. (mhays@dowlohnes.com)
Mitchell H. Stabbe, Esq. (mstabbe@dowlohnes.com)
Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, D.C.  20036-6 802

James G. Sawtelle (jsawtelle@faegre.com)
Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414

Martin Lobel, Esq. (lobel@lnllaw.com)
Lee Ellen Helfrich, Esq. (helfrich@lnllaw.com)
Lobel, Novins & Lamont, LLP
888 17th St., N.W.
Suite 810
Washington, DC 20006

Scott M. Dewolf, Esq. (sdewolf@rhmlawyers.com)
Kathleen M. Patrick, Esq. (kpatrick@rhmlawyers.com)
Rochelle, Hutcheson & McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEREDITH CORPORATION,                )
                                     )
            Plaintiff,               )
                                     )
v.                                   )    Case No. 1:08-cv-00257 RBW
                                     )
HOME INTERIORS & GIFTS, INC.,        )
                                     )
            Defendant.               )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF PLAINTIFF MEREDITH CORPORATION'S MOTION
## FOR A PRELIMINARY INJUNCTION

Of Counsel
James G. Sawtelle

Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414
Telephone: (303) 447-778
Facsimile: (303) 447-7800
jsawtelle@faegre.com

Michael D. Hays (D.C. Bar No. 932418)
Mitchell H. Stabbe (D.C. Bar No. 333427)

Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, D.C. 20036-6802
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
mhays@dowlohnes.com
mstabbe@dowlohnes.com

Counsel for Plaintiff Meredith Corporation

April 2, 2008

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF FACTS ............................................................................................................... 1

    A.    Background Of Meredith And The Trademarks At Issue ...................................... 1

    B.    HIG License Agreement ....................................................................................... 7

    C.    Highland Capital's Purchase Of A Majority Interest In HIG And The Subsequent Diminished Use And Commitment To The Better Homes And Gardens Brand ..................................................................................................... 9

    D.    HIG's Breach Of The License Agreement............................................................ 9

ARGUMENT ................................................................................................................................... 11

    A.    Meredith Has A Likelihood Of Success On The Merits On Its Lanham Act Claims. ............................................................................................. 11

        1.      The Meredith Marks Are Valid, Distinctive Marks................................. 12

        2.      Likelihood Of Confusion ........................................................................ 14

    B.    Unless HIG Is Restrained From Using The Meredith Marks, Meredith Will Suffer Irreparable Injury. .............................................................................. 18

    C.    An Injunction Prohibiting HIG From Using The Meredith Marks Would Not Substantially Injure HIG Because It Can Continue To Operate Its Business. ............................................................... 19

    D.    The Public Interest Favors An Injunction............................................................. 20

    E.    An Injunction Bond Should Not Exceed $10,000 ............................................... 21

CONCLUSION................................................................................................................................. 21

## INTRODUCTION

Plaintiff Meredith Corporation ("Meredith"), by and through its undersigned counsel, submits the following Memorandum of Points and Authorities in Support of its Motion for a Preliminary Injunction against Defendant Home Interiors & Gifts, Inc. ("HIG").

As described more fully below, Plaintiff Meredith, publisher of BETTER HOMES AND GARDENS® magazine, is the owner of valuable trademarks associated with that publication and other services and products. It granted a limited license to HIG to use certain of these trademarks with respect to certain products, upon the express condition that it pay Meredith specified licensing fees. In breach of that agreement, HIG has failed to pay Meredith at least $1,000,000 of the licensing fees that it owes, but nonetheless impermissibly continues to use Meredith's trademarks. Accordingly, Meredith is entitled to a preliminary injunction prohibiting HIG from any further use of such trademarks.

## STATEMENT OF FACTS

### A.    Background Of Meredith And The Trademarks At Issue.

Founded in 1902, Meredith is one of the nation's leading marketing and media companies. Declaration of David S. Johnson dated March 31, 2008 ("Johnson Decl.") ¶ 4.[1] Meredith's businesses include magazine publishing, television broadcasting, integrated marketing, and interactive media. Meredith is the leading publisher serving women, reaching over 75 million women every month. Id.

BETTER HOMES AND GARDENS®, Meredith's flagship and most valuable brand, is one of the most recognized and trusted brands in America. Id. ¶ 5. BETTER HOMES AND

---

[1]    The facts set forth herein are also based upon the certificates of registration issued by the United States Patent and Trademark Office, copies of which are attached as Exhibits 1 and 3 to the Johnson Declaration.

GARDENS® magazine itself, founded in 1922, is today one of the largest magazines in the United States, reaching over 39 million households each month. In 2007, BETTER HOMES AND GARDENS® magazine was named "Magazine of the Year" by *Advertising Age*. Id.

In addition, over the years, Meredith has successfully extended the BETTER HOMES AND GARDENS® brand across a wide variety of media platforms to serve the consumer, providing information and inspiration in the home and family areas. Id. ¶ 6. For example, Meredith sells over 150 special interest publications under the BETTER HOMES AND GARDENS® brand; it publishes numerous books under the brand, led by the BETTER HOMES AND GARDENS® COOKBOOK (which originally launched in 1932 and is one of the best selling non-fiction books of all time); it launched the BETTER HOMES AND GARDENS® website, *BHG.com,* which is the leading home magazine Internet portal in the U.S., attracting over 4 million unique visitors each month; and it has recently launched better.tv, a broadband network offering Internet users original video content and programming, under the BETTER HOMES AND GARDENS® brand. Id.

Meredith's BETTER HOMES AND GARDENS® trademark and service mark is federally registered on the Principal Register[2] of the United States Patent and Trademark Office, as follows:

---

[2]  The Patent and Trademark Office's Principal Register is reserved for marks that are either inherently distinctive or, over time and through promotion and use, have developed distinctiveness or a "secondary meaning" in the mind of the public. Lanham Act § 2(e), (f), 15 U.S.C. § 1052(e), (f).

| Mark | Goods/Services | Reg. No./ Reg. Date |
|------|----------------|---------------------|
|  | Entertainment services in nature of contests in the fields of gardening, home décor, home improvement and cooking. | 3326079 <br><br> Oct. 30, 2007 |
| BETTER HOMES AND GARDENS | Accent pillows. <br><br> Comforters, bed skirts, pillow shams of various sizes, curtains, valences, duvet covers, futon covers and day bed covers, all made of fabric. | 3277245 <br><br> Aug. 7, 2007 |
| BETTER HOMES AND GARDENS | Recipe cards. | 3256938 <br><br> June 26, 2007 |
|  | Providing recipe development; providing testing, research and analysis of recipes, food preparation, cooking methods and providing information related to such testing, research and analysis. | 3234768 <br><br> April 24, 2007 |
|  | Publications, namely magazines, books, booklets and pamphlets relating to food, cooking and the art of food preparation; recipe cards. | 3218766 <br><br> March 13, 2007 |
| BETTER HOMES AND GARDENS | Fabric for the manufacture of home décor and bedding. | 3166378 <br><br> Oct. 31, 2006 |
| BETTER HOMES AND GARDENS | Cheese spreaders. <br><br> Lighted trees, garlands and wreaths, electric lights for Christmas trees, electric holiday lights and light sets. <br><br> Photo frames and plaques; holiday ornaments other than tree ornaments made from bone, ivory, plaster, plastic, wax or wood. <br><br> Servingware, namely platters, cake plates, cookie plates, dessert plates, teapots, cups, mugs, cookie jars, compote bowls, wine bottle chillers, all made from glass, china, porcelain or ceramic; candle holders, bells, holiday ornaments other than tree ornaments, all made from glass, china, porcelain or ceramic; cutting boards. <br><br> Garlands made from fabric; fabric mantel scarves. <br><br> Artificial trees, garlands, wreaths; artificial indoor/outdoor topiaries; artificial floral arrangements. <br><br> Artificial Christmas trees, garlands and wreaths; Christmas tree toppers; Christmas stockings; Christmas tree skirts; Christmas stocking hangers. | 3091547 <br><br> May 9, 2006 |

| BETTER HOMES AND GARDENS | Holiday ornaments made from metal not tree ornaments. | 3091375 |
|---|---|---|
| | Holiday ornaments made from bone, ivory, plaster, plastic, wax or wood not tree ornaments. | May 9, 2006 |
| | Holiday ornaments made from china, crystal, glass, porcelain, terracotta not tree ornaments. | |
| | Holiday ornaments made from fabric not tree ornaments. | |
| BETTER HOMES AND GARDENS | Christmas tree ornaments. | 3091374 |
| | | May 9, 2006 |
| BETTER HOMES AND GARDENS | Candles. | 2921793 |
| | | Jan. 25, 2005 |
| BETTER HOMES AND GARDENS | Earthenware tableware, namely plates, saucers, cups and bowls; earthenware storage containers, namely canisters; earthenware servingware; earthenware candle holders; earthenware bakeware; glassware namely drinkware, pitchers, vases; candle holders and sconces not of precious metal; indoor decorative products namely vases, decorative flower pots all made of resin; baskets made of wicker, cane, or reed; decorative outdoor accessories, namely wind chimes. | 2979393 |
| | | July 26, 2005 |
| BETTER HOMES AND GARDENS | Computer software in the field of home design and home plans. | 2866924 |
| | | July 27, 2004 |
| BETTER HOMES AND GARDENS | Providing mail order wine club services. | 3316564 |
| | | Oct. 23, 2007 |
| BETTER HOMES & GARDENS | Periodically printed publications, namely magazines featuring articles and information of general interest subject matter. | 2802181 |
| | | Jan. 6, 2004 |
| BETTER HOMES AND GARDENS | Water gardening products, namely, fountains, fountain pumps, fountain nozzles, and pond pumps. | 2868633 |
| | Hoses for agricultural and horticultural purposes. | Aug. 3, 2004 |
| | Lawn and garden sprinklers; sprinkler accessories, namely, spikes, nozzles, faucet connections and shower wands; plant and flower pots; lawn and garden hose nozzles and hose attachments. | |
| BETTER HOMES AND GARDENS | Decorative metal hooks and brackets. | 2701851 |
| | Tote bags; patio and market umbrellas. | April 1, 2003 |
| | CL 20 - Hand-operated non-metal hose reels; cushions; and lawn furniture. | |
| BETTER HOMES AND GARDENS | Prerecorded video cassettes featuring homemaking cooking, decorating, gardening, plant care, home improvement, and other topics of interest to home owners. | 1581260 |
| | | Feb. 6, 1990 |
| | | Incontestable |

| BETTER HOMES AND GARDENS | Calendars. | 1573340 Dec. 26, 1989 Incontestable |
|---|---|---|
| BETTER HOMES AND GARDENS | Publications, namely, books. | 1496734 July 19, 1988 Incontestable |
| BETTER HOMES AND GARDENS | Printed construction plans for home and family crafts and projects.  Needle work kits principally composed of thread, yarn and fabric containing needlepoint patterns.  Hobby kits for the construction of dolls.  Book club services; direct sales services of craft items by the home party plan; catalogue mail order services in the field of craft items useful in home decorating and furnishing. | 1155530 May 26, 1981 Incontestable |
| **Better Homes** (logo) | Real estate brokerage services. | 1127617 Dec. 11, 1979 Incontestable |
| BETTER HOMES AND GARDENS | Real estate brokerage services. | 1127616 Dec. 11, 1979 Incontestable |
| BETTER HOMES AND GARDENS | Monthly magazine. | 0754656 Aug. 13, 1963 Incontestable |
| **Better Homes** (logo) | Monthly magazine. | 0721355 Sept. 12, 1961 Incontestable |
| **Better Homes & Garden** (logo) | Monthly magazine. | 0203616 Sept. 22, 1925 Incontestable |

Id. ¶ 7; Johnson Decl. Ex. 1. Also, Meredith has applications pending with the United States Patent and Trademark Office for its BETTER HOMES AND GARDENS® mark for the following goods and services:

| Goods/Services | Serial No. |
|---|---|
| Sleep products, namely, mattresses, spring mattresses, box springs and mattress foundations. | 77/367953 |
| Paint, namely exterior paint, interior paint, house paint, enamel paint. | 77/367946 |
| Cut flowers; live flowers; live flower arrangements and wreaths; flower bulbs; flower seeds. | 77/367942 |
| Musical sound recordings. | 77/367747 |
| Bedroom furniture, living room furniture, dining room furniture, family room furniture and den furniture. | 77/099958 |
| Fabric chair pads; and fitted fabric furniture covers.<br><br>Bedding, namely, bed sheets; throws; fabric window coverings, namely, window panels of polyester, cotton, wool, silk, linen, nylon, rayon and blends thereof, and sheers; textile table linens, namely, tablecloths and table coverings; napkins, placemats, all made from fabric; kitchen textiles, namely, towels, dishcloths, potholders, oven mitts, all made from fabric; bath towels; decorative bath towels; hand towels; washcloths; shower curtains. | 77/312566 |
| Architectural design services for homes; interior and exterior decorating design services; landscape design services. | 77/368239 |
| Credit card services. | 77/319067 |
| Rugs, namely area rugs of various sizes, doormats, indoor/outdoor rugs. | 77/312413 |
| Ready-to-assemble furniture; decorative mirrors; drapery hardware, namely, decorative rods and rings. | 77/312354 |
| Floor lamps; table lamps; decorative lamps. | 77/312346 |
| All-purpose food storage containers; all-purpose portable household storage containers; kitchen organization products; butler trays; accent trays; bath accessories, namely cup holders, toothbrush holders, soap dishes, waste baskets. | 77/312370 |
| Providing information via a website relating to food, cooking and the art of food preparation, decorating, gardening, health, home building and remodeling, shopping, travel, crafts, needlework and other topics of interest to homeowners and families. | 77/234146 |

Id.; Johnson Decl. Ex. 2. The foregoing marks shall be referred to, collectively, as the "BETTER

HOMES AND GARDENS® Marks".

Since at least as early as September 16, 1968, Meredith has also used a "Plaid Checker

Board" design mark to promote its goods and services. Id. ¶ 8. A photograph of that mark, in

use on the latest edition of the BETTER HOMES AND GARDENS® COOKBOOK, appears below:

- 6 -



The Plaid Checker Board design mark is federally registered as well with the United States Patent and Trademark Office (U.S. Reg. No. 1,231,837, issued Mar. 22, 1983). Id. ¶ 8. The BETTER HOMES AND GARDENS® Marks and the Plaid Checker Board design mark shall be referred to, collectively, as the "Meredith Marks."

Meredith's use of the Meredith Marks has been continuous and the sale of products under the Meredith Marks has been substantial. Id. ¶ 10. Meredith has invested a substantial amount of time, money, and other resources to promote, advertise, and protect the Meredith Marks and the products and services sold thereunder. Id.; Terms and Conditions § 1.5.3.

Because of such reputation and public awareness, Meredith has established valuable goodwill in connection with sales and promotion of its products and services under the Meredith Marks, and said marks have become famous. The goodwill associated with the Meredith Marks is one of Meredith's most valuable assets. Johnson Decl. ¶ 11.

**B.     HIG License Agreement.**

HIG is a company engaged in the manufacture, promotion, and sale of home decorating products. It is a large, sophisticated company with over 1000 employees and annual sales in excess of $500 million. Id. ¶ 12. In approximately 2003, HIG approached Meredith with a request for a license to use the Meredith Marks in connection with the promotion and sale of certain of its products within a specific territory and specific channels of distribution. Id. ¶ 13.

On June 8, 2003, after months of negotiation during which HIG was represented by counsel, Meredith and HIG entered into the "Meredith Corporation—Home Interiors & Gifts, Inc. Strategic Alliance," which included a "License Summary" and certain "Terms and Conditions" (collectively, the "Limited License Agreement" or "Agreement"). Id. ¶ 14. The Limited License Agreement provides for the grant to HIG of a limited license to use the Meredith Marks for certain home decorative products, in accordance with the specific terms of said Agreement. Id. ¶ 15. The license grant to HIG and Meredith's permission for HIG to continue to use the Meredith Marks is expressly "subject to" HIG's compliance with the terms and conditions of the Agreement, including the provisions for payment of royalties. Terms and Conditions § 1.1.1; Johnson ¶ 16.[3]

In consideration of the license grant, the Limited License Agreement requires HIG to pay certain minimum royalties to Meredith ("Guaranteed Annual Minimum Royalty") in specific amounts and according to the terms set forth in the Agreement. License Summary § 2; Johnson Decl. ¶ 17. The Limited License Agreement further requires HIG to pay Meredith royalties calculated on net sales of licensed products, based on written reports, which HIG is required to provide to Meredith periodically. License Summary § 3; Johnson Decl. ¶ 17.

---

[3] The licensed products are candles; clocks; pre-framed and unframed, non photographic wall artwork and decorative mirrors; artificial florals; tableware, namely, dishes, silverware, napkins, placements, tablecloths, table runners, serving pieces/dishes, and containers and baskets typically used on kitchen countertops and kitchen/dining room tables (excluding other linens, containers and baskets not typically used on kitchen countertops and kitchen/dining room tables); formed metal, glass, resin, ceramic and wood indoor home decorative products; decorative garden accessories; and Christmas and other seasonal decorations and accessories. Limited License Agreement (License Summary) § B; Johnson Decl. ¶ 15.

**C.**     **Highland Capital's Purchase Of A Majority Interest In HIG And The Subsequent Diminished Use Of And Commitment To The Better Homes And Gardens Brand.**

Highland Capital Management, L.P. ("Highland") is a Dallas-based venture capital fund and distressed debt hedge fund. In approximately January 2006, Highland acquired the outstanding debt of HIG, which it then converted to a majority shareholder position. Johnson Decl. ¶ 18.

According to *The Dallas Morning News*, Highland is a demanding firm known for putting intense pressure on the companies in which it invests, and employing "aggressive legal tactics" to further its business interests by "wear[ing] down its adversaries." Id. ¶ 18. Those tactics reportedly include "filing numerous lawsuits and forcing troubled companies into involuntary bankruptcy" if management does not promptly respond to its demands. Id.; see "High Intensity Pays Off For Highland Capital," *The Dallas Morning News* (September 2, 2006).

Since Highland assumed a majority ownership of HIG, HIG has steadily decreased its use of and reliance on the Meredith Marks as a means to differentiate its products and drive business. Examples are set forth in the Johnson Declaration. See Johnson Decl. ¶ 20.

**D.     HIG's Breach Of The Limited License Agreement.**

Pursuant to the Agreement, for calendar year 2007, HIG was required to pay a Guaranteed Annual Minimum Royalty. License Summary ¶ G; Johnson Decl. ¶ 21. Notwithstanding the express terms of the Agreement, HIG has failed to pay one million dollars ($1,000,000) of its Guaranteed Annual Minimum Royalty for 2007, which was due as of January 30, 2008. It has also failed to provide the written reports, as required, that would enable Plaintiff Meredith to determine whether any additional royalties are due. Johnson Decl. ¶ 21.

On February 8, 2008, during a telephone conversation initiated by Meredith with HIG executives Brian Hermes (Vice President and General Counsel) and Ed Moseley (Vice President of Strategy and Restructuring) to discuss HIG's failure to tender the $1 million payment that HIG owes Meredith, these representatives stated that it was Highland that had directed HIG not to make the payment. Id. ¶ 22. They further stated that they had been instructed by Highland to renegotiate the Limited License Agreement between HIG and Meredith and to inform Meredith that, unless Meredith is willing to renegotiate the HIG Agreement, Highland will force HIG into bankruptcy and convert the amounts owed to an unsecured claim in bankruptcy. Id.

Following this conversation, on February 8, 2008, Meredith provided HIG formal notice of its default under the Limited License Agreement and demanded the delinquent payment and reports by noon, February 13, 2008. Id. ¶ 23. In a letter faxed to Meredith at 12:37 p.m. on February 13, 2008, HIG refused to pay the money it owes Meredith.[4] In an effort to avoid further litigation, including the necessity of the instant motion, Meredith reiterated its demand for the delinquent payment and reports in correspondence dated February 15 and March 28, 2008. Id. ¶ 37.

Despite Meredith's repeated demands for payment and reports pursuant to the Agreement, and despite HIG's representations that it seeks to resolve the issue of its delinquent payment and produce the requested reports, nearly eight weeks have passed since these representations were first made and HIG has made no further efforts to meet its contractual

---

[4] In this letter, HIG provided two pretextual bases for its failure to pay the money it owes Meredith. It asserted that Meredith breached the Agreement "by recently entering into a licensing agreement with Wal-Mart" and by failing to provide "a link to Home Interiors' website on *www. bhg.com*." Both of these assertions are false (Johnson Decl. ¶¶ 25-36) but, in any event, as established below, do not excuse HIG's continued use of the Meredith Marks without payment.

- 10 -

obligations. Id. ¶ 38. Moreover, despite such failures, HIG impermissibly continues to use the

Meredith Marks in connection with the promotion and sale of its products to the public, and has

given no indication that it intends to cease doing so. Id.

## ARGUMENT

Meredith seeks a preliminary injunction prohibiting Defendant HIG from using the

Meredith Marks. To obtain a preliminary injunction, a plaintiff must establish:

> (1) that it has likelihood of success on the merits, (2) that plaintiff would suffer
> irreparable injury without the injunction, (3) that the injunction would not
> substantially harm other parties, and (4) that the public interest is served by the
> injunction.

Appleseed Found. Inc. v. Appleseed Inst., Inc., 981 F. Supp. 672, 674 (D.D.C. 1997) (granting

preliminary injunction in trademark case), citing Wash. Metro. Area Transit Comm'n, v. Holiday

Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977). See Russian Acad. of Sciences v. Am.

Geophysical Union, No. Civ. 98-2165, 1998 WL 34333239, at *3 (D.D.C. Dec. 17, 1998)

(granting preliminary injunction in trademark case). As established below, Meredith meets each

of the requirements for the issuance of a preliminary injunction.

### A.    Meredith Has A Likelihood Of Success On The Merits On Its Lanham Act Claims.

Meredith has asserted claims against HIG for violation of Section 32(1)(a) of the Lanham

Act, 15 U.S.C. § 1114(1)(a)[5] (Count II), and for violation of Section 43(a) of the Lanham Act,[6]

---

[5]  Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits the use in commerce by any person without the consent of the registrant of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ."

[6]  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides protection for registered and unregistered marks. It prohibits the use of: "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive

- 11 -

15 U.S.C. § 1125(a) (Count III). Section 32(1)(a) and Section 43(a) impose similar requirements to establish a trademark infringement claim. Under each of these provisions, a "plaintiff will prevail if it demonstrates that: (1) it owns a valid trademark that is distinctive or has acquired a secondary meaning; and (2) there is substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." See Russian Acad., 1998 WL 34333236, at *3 (Section 43(a) claim); Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de Washington-DC, Maryland y Virginia v. Partido Revolucionario Dominicano, Sessional de Maryland y Virginia, 312 F. Supp. 2d 1, 11, 15 (D.D.C. 2004) (Section 43(a) claim); Appleseed Found. Inc., 98 F. Supp. at 674-675 (Section 32(1)(a) claim).[7]

### 1. The Meredith Marks Are Valid, Distinctive Marks.

Meredith easily satisfies the first criterion entitling it to protection, i.e. that the Meredith Marks are either (1) "inherently distinctive" or (2) have "acquired distinctiveness through secondary meaning." Partido Revolucionario Dominicano, 312 F. Supp. 2d at 12. Trademarks that are registered on the Principal Register are presumptively inherently distinctive or distinctive through secondary meaning and are, therefore, protectable. Lanham Act § 7(b), 15 U.S.C. § 1057(b); John Curry Skating Co., Inc. v. John Curry Skating Co., 626 F. Supp. 611, 616 n.2

---

as to the affiliation, connection, or association of such person with another person, or as the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a).

[7] Meredith has also asserted unfair competition claims under Section 43(a) of the Lanham Act and under the common law of the District of Columbia (Count III and Count IV). Those claims are analyzed in essentially the same way as trademark infringement claims. See Partido Revolucionario Dominicano, 312 F. Supp. 2d at 11-12 ("the essential elements are the same for either a trademark infringement or unfair competition action."); Am. Ass'n for the Advancement of Science v. Hearst Corp., 498 F. Supp. 244, 262 (D.D.C. 1980) (because Court found clear case of trademark infringement, it was "redundant to explore further whether Hearst's actions also constitute unfair competition under . . . the common law of the District of Columbia").

(D.D.C. 1985) (the fact that a mark is registered on the Principal Register "is *prima facie* evidence of secondary meaning"). Accord Am. Ass'n for the Advancement of Science, 498 F. Supp. at 256 ("A mark's registration on the Principal Register is prima facie evidence of . . . its having acquired secondary meaning").

All of the registrations for the Meredith Marks are on the Principal Register. Johnson Decl. ¶ 9. Therefore, those marks are presumed to be sufficiently distinctive to be protected, either because they are inherently distinctive or because they have acquired secondary meaning.[8] Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n, 929 F. Supp. 473, 476 (D.D.C. 1996) ("[R]egistration of a trademark is prima facie evidence . . . that the 'mark is distinctive'") (quoting Am. Ass'n for the Advancement of Science, 498 F. Supp. at 254). Moreover, the Patent and Trademark Office issued the various registrations for the Meredith Marks without requiring Meredith to establish secondary meaning. Accordingly, a presumption exists that the Meredith Marks are inherently distinctive. See, e.g., Synergistic Intern., LLC v. Korman, 470 F.3d 162, 172 (4th Cir. 2006) (plaintiff "entitled by law to the rebuttable presumption that its . . . mark is suggestive" because PTO registered mark without proof of secondary meaning); Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st

---

Accordingly, trademark infringement will generally constitute unfair competition. Caesars World, Inc. v. Caesar's Palace, 490 F. Supp. 818, 828 (D.N.J. 1980).

[8] Indeed, a number of registrations for the Meredith Marks are incontestable within the meaning of the Lanham Act since they have been in place for over five years and cannot be challenged on the basis that the marks are merely descriptive. Lanham Act. § 15(a), 15 U.S.C. § 1115(a); Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 205 (1985) ("[T]he holder of a registered mark may rely on incontestability to enjoin infringement and . . . such action may not be defended on the grounds that the mark is merely descriptive.").

Cir. 2006) (same); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) (same). [9]

Furthermore, Defendant HIG has conceded that "the reputation of and goodwill associated with the Branding Elements," defined in Exhibit A to the Agreement as the BETTER HOMES AND GARDENS® mark and the Plaid Checker Board design mark (i.e., the Meredith Marks), "are among Meredith's most valued assets." Terms and Conditions § 1.5.3. Indeed, HIG agreed to pay Meredith millions of dollars for permission to use the Meredith Marks. For these reasons, it is indisputable that the Meredith Marks are entitled to protection.

## 2. Likelihood Of Confusion.

Meredith also clearly meets the second requirement entitling it to trademark protection, i.e., a showing that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark. See Russian Acad., 1998 WL 34333236 at *3 (Section 43(a) claim); Blacks in Gov't v. Nat. Ass'n of Blacks Within Gov't, 601 F. Supp. 225, 227 (D.D.C. 1983) ("The key issue that the Court must examine . . . on both the statutory and common law

---

[9]   The long and widespread use of the Meredith Marks, combined with the significant promotional and advertising efforts relating to those marks, would easily establish that the marks have acquired secondary meaning, even without the presumption set forth above. The BETTER HOMES AND GARDENS® mark has been in use since 1922. Johnson Decl. ¶ 5. Plaintiff's BETTER HOMES AND GARDENS® magazine reaches over 39 million households each month. Meredith has expanded the use of the mark to a wide variety of media platforms, providing information and inspiration in the home and family areas, as well as to numerous consumer products. Id. ¶ 6. The "Plaid Checker Board" design mark has been in use since 1968 and it, too, has been used on products with extensive sales. Id. ¶ 8. See Duggal v. Krishna, 554 F. Supp. 1043, 1047 (D.D.C. 1983) (finding secondary meaning in COURTIER DIPLOMATIQUE mark for magazine based on publication of magazine for six months, $100,000 in expenditures, and demand letters from creditors); Russian Acad., 1998 WL 34333239 at *3 (secondary meaning established in GEOMAGNETISM AND AERONOMY mark, based, inter alia, on use of the mark as the title of a scientific journal for forty years).

- 14 -

claims is whether the adoption of the trade name . . . has resulted in a 'likelihood of confusion'") (citation omitted).

Trademark infringement actions typically involve claims against parties who have never been authorized to use the mark at issue. In such cases, the court generally analyzes a variety of factors to determine if there is a likelihood of confusion between the plaintiff's mark and the defendant's mark.[10]

In the instant matter, however, there is no dispute that HIG continues to promote numerous products using exactly the same marks as Meredith, i.e., the Meredith Marks. Johnson Decl. ¶ 39.[11] "Where the marks, as here, are identical, the likelihood of continued confusion is clear . . . ." Crime Control, Inc. v. Crime Control, Inc., 624 F. Supp. 579, 581 (D.D.C. 1984)

---

[10] These factors include: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) evidence of actual confusion; (5) the defendant's purpose or reciprocal of good faith in adopting its own mark; (6) the quality of defendant's product; and (7) the sophistication of the relevant consumer market. See, e.g., Partido Revolucionario Dominicano, 312 F. Supp. 2d at 14; Russian Acad., 1998 WL 34333236 at *7. Here, as HIG is using exactly the same marks as the Meredith Marks for goods in the licensed product lines, these factors all support a likelihood of confusion determination.

[11] These products include, among others the following: Apple-a-Day Cookie Jar; Artesia Hummingbird Feeder; Artisan Stemware; Audrey Hot and Cold Dips; Audrey Serving Collection (3pc pedestals, bowls); Ava Tiered Stand; Barona Canister Set; Becker Outdoor Furniture (table and chairs); Bella Trivets; Benton Basket Tree; Blossom Place Card Holders; Casserole Sets; Catalina Chandelier; Celebrations Cupcake Tree; Ceramic Fruit Containers; Copper Party Lights; Decorating Ribbon; Delaney Hanging Basket Stand; Eclectic Cross Windchime; Farmhouse Bucket; Francisco Orbs; Galena Decorative Tray; Garden Shepherd's Hooks; Gilded Table Lamp; Granada Chandelier/Centerpiece; Grand Hurricane; Grayson Tiered Pedestal Stand; Grove Hill Chargers; Hadley Garden Stakes; Hand Lotion, Scrub, and Therapy; Ivory Dinnerware; Ivory Serving Bowl; Ivory Serving Platter; Lawrence Tiered Serving Stand; Linley Serving Tray; Melrose Hurricane; Mirrored Leaf Sconce; Monterrey Iron Crosses; Parker Garden Cart; Peyton Centerpiece Bowl; Porter Beverage Caddy; Portland Candle Pedestals; Potpourri; Provence Lazy Susan; Reed Diffusers; Rosetta Stemware; Scooter The Rooster; Sculpted Glass Vessels; Soleil Mosaic Birdbath; Soleil Mosaic Lantern; Sonoma Villa Canisters, Serving Bowls; Sonoma Villa Salt-N-Pepper Shakers; Sonoma Villa Spreaders; Sonoma Villa Teapot; Sonoma Villa Utensil Holder; Soy Candles; Spiral Wall Hanging; The Great Divide

(emphasis added). See United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 142 (3d Cir. 1981) ("there is a great likelihood of confusion when an infringer uses the exact trademark").

The conditional grant to HIG of permission to use the Meredith Marks in the Limited License Agreement does not impair Meredith's right to an injunction. HIG has materially breached the Limited License Agreement by failing to pay the Guaranteed Annual Minimum Royalty that is due and by failing to provide the reports that would enable Meredith to ascertain whether additional royalties are due. HIG's failure to perform its obligations under the Limited License Agreement negates its right to use the Meredith Marks.

Virtually the same situation was presented in Donoghue v. IBC/USA (Publications), Inc., 886 F. Supp. 947 (D. Mass), aff'd, 70 F.3d 206 (1st Cir. 1995). In that case, the defendant ceased making the royalty payments that had entitled it to use the plaintiff's name in the title of various publications. The court found that the "plaintiff is thus likely to prevail in establishing that the use of his name in the titles of these publications without the payment of compensation constitutes unauthorized use in contravention" of the underlying agreement. Id. at 953. In addressing the likelihood of confusion element, the court stated:

The likelihood of confusion in the public's mind occasioned by an unauthorized use of the plaintiff's name by the defendants is clear. . . . If the defendants were to use the plaintiff's name in such a way that suggested that the plaintiff had authorized the connection between the plaintiff's name and certain statements or products, when such was not in fact the case, there would be a high probability of public confusion. Accordingly, any unauthorized use of the plaintiff's name by the defendants would constitute an infringement of the plaintiff's trademark in his name.

Donoghue, 886 F. Supp. at 953 (emphasis added).

---

Bowl; Tiered Square Centerpiece; Traditions Cookbook Stand; Vintage Find Birdhouse; Wooden Rice Basket; and Zest Mixing bowls. Johnson Decl. ¶ 39.

The <u>Donoghue</u> defendants argued that plaintiff violated the agreement between them, and

that thus the plaintiff was not entitled to injunctive relief. In rejecting this contention, the Court

held:

> While the plaintiff may have failed to comply with all of the terms of the
> [agreement], the defendants were not free to stop paying royalties. In a case
> similar in some respects to this one, the Third Circuit rejected the defendant's
> position that it could stop paying royalties and continue to use the plaintiff's
> name, because he thought that the plaintiff had violated the applicable
> contract. . . . The court stated: "Under basic contract principles, when one party
> to a contract feels that the other contracting party has breached its agreement, the
> non-breaching party may either stop performance and assume the contract is
> avoided, or continue its performance and sue for damages.    Under no
> circumstances may the non-breaching party stop performance and continue to take
> advantage of the contract's benefits . . . . [U]se of the trademark under these
> circumstances amounts to infringement under the Lanham Act."

<u>Donoghue</u>, 886 F. Supp. at 954 (quoting <u>S & R Corp. v. Jiffy Lube Intern., Inc.</u>, 968 F.2d 371,

376 (3d Cir. 1992)) (emphasis added). <u>Accord Jet Blast, Inc. v. Hershey's Mill Indus. Servs.,</u>

<u>Inc.</u>, 32 U.S.P.Q.2d 1173, 1994 WL 220000 (E.D. Pa. 1994) (when defendant "failed to make

payments" required by agreement, "defendant forfeited its right to use trade name").

Accordingly, the Court granted a preliminary injunction under the Lanham Act against the

continued use of the licensed name. <u>Id.</u>

HIG's failure to provide Meredith the financial reports required under the License

Agreement similarly establishes that it may no longer use the Meredith Marks. <u>See Jet Blast,</u>

<u>Inc.</u>, 32 U.S.P.Q.2d 1173, 1994 WL 220000. In <u>Jet Blast</u>, the defendant "failed to provide

financial statements to plaintiff" as its agreement required (in addition to its failure to make

payments). <u>Id.</u> at *8. Accordingly, the court concluded that the "defendant forfeited its right" to

use the licensed name and that "the use of the service mark ... was unconsented to and,

therefore, unauthorized" under the Lanham Act. Thus, it entered an injunction under the

Lanham Act against any further use of the plaintiff's mark. <u>Id.</u> Similarly, where the licensee has

lost its right to use the licensed mark, either because it breached other provisions of its licensee agreement[12] or because the license agreement has been terminated,[13] courts have not hesitated to conclude that the licensee has lost the right to use the trademarks.

Under these authorities, because Defendant HIG has failed to perform its obligations under the Agreement, it no longer has the right to use the Meredith Marks. Accordingly, the continued use of the Meredith Marks is unauthorized and infringing and must be enjoined.

## B.    Unless HIG Is Restrained From Using The Meredith Marks, Meredith Will Suffer Irreparable Injury.

As a matter of law, Meredith also satisfies the irreparable harm prong of the preliminary injunction requirements. "Trademark infringement raises a presumption of irreparable harm." Malarkey-Taylor Assoc., Inc., 929 F. Supp. at 478. See Donoghue, 886 F. Supp. at 954 ("presumption of irreparable harm" exists in trademark case). "Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm." Sears, Roebuck & Co. v. Sears Fin. Network, 576 F. Supp. 857, 864 (D.D.C. 1983).[14]    Indeed, in

---

[12]  See, e.g., Franchised Stores of N.Y., Inc. v. Winter, 394 F.2d 664, 668 (2d Cir. 1968) (Lanham Act claim existed where licensee used mark on unauthorized goods in breach of licensing agreement); Dunkin' Donuts Inc. v. Kashi Enters., Inc., 106 F. Supp. 2d 1325, 1327 (N.D. Ga. 2000) (licensee lost right to use of mark when it breached franchise agreement, which required it to operate a clean and safe franchise); Dunkin' Donuts, Inc. v. Albireh Donuts, Inc., 96 F. Supp. 2d 146, 150 (N.D.N.Y. 2000) (same).

[13]  See, e.g., Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co., Inc., 576 F. Supp. 1055 (E.D.N.Y. 1983) (recognizing that sales made in breach of license agreement and sales made after termination of license agreement each constitute trademark infringement). Accord Burger King Corp. v. Mason, 710 F.2d 1480, 1492-1493 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984) (licensee's use of trademark after franchise agreement was lawfully terminated constituted trademark infringement).

[14]  Accord Partido Revolucionario Dominicano, 312 F. Supp. 2d at 15 ("Trademark infringement 'by its very nature causes irreparable injury.'") (citation omitted); Appleseed Found. Inc., 981 F. Supp. at 677 (same); Basile v. Basile S.P.A., Civ. A. No. 86-3433, 1988 WL 93110, at *3 (D.D.C. Aug. 29, 1988) ("'Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm.'") (citation omitted).

- 18 -

addressing the same situation as presented here, where the defendant was using the same mark as

the plaintiff, the Court in Crime Control stated:

> Where confusion is demonstrated and is likely to continue, irreparable injury to
> good will and loss of trade are likely. . . . Where the marks, as here, are identical,
> the likelihood of continued confusion is clear and this satisfies the irreparable
> injury requirement.

Crime Control, 624 F. Supp. at 581 (emphasis added; citations omitted).

Moreover, recognizing these principles, Defendant HIG acknowledged Meredith's right

to an injunction in Section 11 of the Terms and Conditions:

> Licensee [HIG] agrees that Meredith will have no adequate remedy at law if
> Licensee breaches a material term of this Agreement. As such, Licensee agrees
> that, in addition to any other remedy available to Meredith, Meredith will have the
> right to have any such breach restrained by equitable relief by posting a bond in
> the amount of $10,000.00.

Terms and Conditions § 11 (emphasis added). Accordingly, Meredith fully satisfies the

irreparable injury prong of the preliminary injunction requirements.

## C.    An Injunction Prohibiting HIG From Using The Meredith Marks Would Not Substantially Injure HIG Because It Can Continue To Operate Its Business.

With respect to the third element of the preliminary injunction analysis, in the instant

case an "injunction would not substantially harm other parties . . . . " Appleseed Found., 981 F.

Supp. at 674. The issuance of an injunction will not substantially harm HIG "because [HIG] will

be able to continue to operate [its] business, though not under" the Meredith Marks. Sears, 576

F. Supp. at 864. As established by the HIG catalog, HIG markets numerous products that it has

not branded with the Meredith Marks. Moreover, nothing prevents HIG from selling unbranded

products in the categories previously branded with the Meredith Marks, or selling its products

branded by another mark. See Johnson Decl. ¶ 44. Further, HIG has steadily reduced the number of products it promotes using the Meredith Marks. Id. ¶ 45.[15]

Moreover, whatever harm an injunction might cause to HIG must be balanced against the harm the failure to issue an injunction would cause Meredith.[16] That balancing "cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark.'" Partido Revolucionario Dominicano, 312 F. Supp. 2d at 16 (quoting Malarkey-Taylor, 929 F. Supp. at 478). While the failure to grant an injunction would irreparably harm Meredith, if an injunction were granted, as noted above, HIG could nonetheless continue to operate its business.

## D.    The Public Interest Favors An Injunction.

Finally, the public interest favors the issuance of an injunction. If Defendant HIG is permitted to continue in its course of conduct, public confusion as to whether the products sold and marketed by Defendant HIG are, in fact, approved by, sponsored by, or affiliated with Plaintiff Meredith will remain unabated and, most likely, increase. "It is in the public interest to prevent confusion over the source or origin of products provided to the public." Russian Acad., 1998 WL 34333236, at *9.

## E.    An Injunction Bond Should Not Exceed $10,000.

The parties have agreed that Plaintiff Meredith has the right to have any material breach of the Limited License Agreement "restrained by equitable relief by posting a bond in the amount of $10,000." The Court should enforce this provision. See Fisher Bioservices, Inc. v.

---

[15] The number of products HIG promotes using the Meredith Marks in its quarterly catalogs has steadily diminished, from a high of 182 in the Early Spring 2006 catalog to just 89 products promoted using the Meredith Marks in the Spring 2008 catalog. Johnson Decl. ¶ 45.

[16] Appleseed Found., 981 F. Supp. at 678 (hardships to defendant by grant of injunction "are outweighed by the confusion" and by "plaintiff's loss of control over its reputation"); Sears, 576

Bilcare, Inc., No. Civ. A. 06-567, 2006 WL 1517382, at *4, *22 (E.D. Pa. May 31, 2006) (granting preliminary injunction without bond where employment agreement stipulated that company could enforce agreement by injunction, without the necessity of a bond). Among other things, HIG is a large, sophisticated company with over 1000 employees and annual sales in excess of $500 million. Johnson Decl. ¶ 12. It was represented by counsel throughout the lengthy Limited License Agreement negotiations with Meredith, and HIG freely entered into that Agreement after through review because it believed it was in its best interests. Id. ¶ 14.

## CONCLUSION

For the reasons set forth above, this Court should issue an order enjoining Defendant HIG from making any further use of the Meredith Marks, including any sale or promotion of products under or in association with those marks.

Respectfully submitted,

Of Counsel

James G. Sawtelle                    by mbH

Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414
Telephone: (303) 447-778
Facsimile: (303) 447-7800
jsawtelle@faegre.com

Michael D. Hays (D.C. Bar No. 932418)
Mitchell H. Stabbe (D.C. Bar No. 333427)

Dow Lohnes PLLC
1200 New Hampshire Ave., N.W. Ste 800
Washington, D.C. 20036-6802
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
mhays@dowlohnes.com
mstabbe@dowlohnes.com

Counsel for Plaintiff Meredith Corporation

April 2, 2008

---

F. Supp. at 864 ("Defendants will suffer some hardships in complying with the injunction; however, this must be balanced against other factors").

- 21 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

)
MEREDITH CORPORATION,             )
                                  )
            Plaintiff,            )
                                  )
     v.                           )      Case No. 1:08-cv-00257 - RBW
                                  )
HOME INTERIORS & GIFTS, INC.,     )
                                  )
            Defendant.            )
_____)

## DECLARATION OF DAVID S. JOHNSON IN SUPPORT
## OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

David S. Johnson, being duly sworn, declares and says:

1.     I am the Vice President, Brand Licensing, of Plaintiff Meredith Corporation ("Meredith"). I am making this declaration in support of Meredith's Motion for a Preliminary Injunction against Defendant Home Interiors & Gifts, Inc. ("HIG").

2.     As described below, Meredith is the publisher of BETTER HOMES AND GARDENS® magazine and is the owner of various valuable trademarks associated with that publication and other services and products. Meredith granted HIG a limited licensed to use certain of these trademarks upon the express condition that it pay Meredith certain licensing fees.

3.     In breach of that agreement, HIG has failed to pay Meredith at least $1,000,000 of the licensing fees that it owes for its usage of the Meredith trademarks during 2007, and continues impermissibly to use Meredith's trademarks without paying for the same. Accordingly, Meredith seeks a preliminary injunction prohibiting HIG from using such trademarks.

**A.    Background Of Meredith And The Trademarks At Issue.**

4.     Founded in 1902, Meredith is one of the nation's leading marketing and media companies.    Meredith's businesses include magazine publishing, television broadcasting, integrated marketing, and interactive media. Meredith is the leading publisher serving women, reaching over 75 million women every month.

5.     BETTER HOMES AND GARDENS®, Meredith's flagship and most valuable brand, is one of the most recognized and trusted brands in America. The BETTER HOMES AND GARDENS® magazine itself, founded in 1922, is today one of the largest magazines in the United States, reaching over 39 million households each month.    In 2007, BETTER HOMES AND GARDENS® magazine was named "Magazine of the Year" by Advertising Age.

6.     In addition, over the years, Meredith has successfully extended the BETTER HOMES AND GARDENS® brand across a wide variety of media platforms to serve the consumer, providing information and inspiration in the home and family areas.    For example, Meredith sells over 150 special interest publications under the BETTER HOMES AND GARDENS® brand; it publishes numerous books under the brand, led by the BETTER HOMES AND GARDENS® COOKBOOK (which originally launched in 1932 and is one of the best selling non-fiction books of all time); it launched the BETTER HOMES AND GARDENS® website, *BHG.com,* which is the leading home magazine Internet portal in the U.S., attracting over 4 million unique visitors each month; and it has recently launched better.tv, a broadband network offering Internet users original video content and programming.

7.     Meredith's BETTER HOMES AND GARDENS® trademark and service mark is federally registered with the United States Patent and Trademark Office, as set forth in Exhibit 1 hereto, together with copies of the certificates of registration for the mark. In addition, Meredith

2

has applications pending with the United States Patent and Trademark Office for the marks as set forth in Exhibit 2. The foregoing marks set forth on Exhibit 1 and 2 shall be referred to, collectively, as the "BETTER HOMES AND GARDENS® Marks".

8. Since at least as early as September 16, 1968, Meredith has also used a "Plaid Checker Board" design mark to promote its goods and services. The Plaid Checker Board design mark is federally registered as well with the United States Patent and Trademark Office (U.S. Reg. No. 1,231,837, issued Mar. 22, 1983). A photograph of that mark, in use on the latest edition of the BETTER HOMES AND GARDENS® COOKBOOK, appears in Exhibit 3, together with s a copy of the certificate of registration for the mark.

9. The BETTER HOMES AND GARDENS® Marks and the Plaid Checker Board design mark shall be referred to, collectively, as the "Meredith Marks". The Meredith Marks are federally registered on the Principal Register.

10. Meredith's use of the Meredith Marks has been continuous and the sale of products under the Meredith Marks have been substantial. Meredith has invested a substantial amount of time, money and other resources to promote, advertise, and protect the Meredith Marks and the products and services sold thereunder.

11. Because of such reputation and public awareness, Meredith has established valuable goodwill in connection with sales and promotion of its products and services under the Meredith Marks, and said marks have become famous. The goodwill associated with the Meredith Marks is one of Meredith's most valuable assets.

**B.     HIG Limited License Agreement**

12.     HIG is a company engaged in the manufacture, promotion and sale of home decorating products. It is a large, sophisticated company with over 1000 employees and annual sales in excess of $500 million.

13.     In approximately 2003, HIG approached Meredith with a request for a license to use the Meredith Marks in connection with the promotion and sale of certain of its products within specific territories and channels of distribution.

14.     On June 8, 2003, after months of negotiation during which HIG was represented by counsel, Meredith and HIG entered into the "Meredith Corporation—Home Interiors & Gifts, Inc. Strategic Alliance," which included a "License Summary" and certain "Terms and Conditions" (collectively, as amended, the "Limited License Agreement" or "Agreement"). The Limited License Agreement has been amended on four occasions: March 2, 2004; January 19, 2005; September 16, 2005; and November 13, 2006. A copy of the Limited License Agreement, as amended, is submitted herewith as Exhibit 4.

15.     The Limited License Agreement provides for the grant to HIG of a limited license to use the Meredith Marks for certain home decorative products, in accordance with the specific terms of said Agreement. The products permitted to be marketed in connection with the Meredith Marks under the limited license are candles; clocks; pre-framed and unframed, non-photographic wall artwork and decorative mirrors; artificial florals; tableware, namely, dishes, silverware, napkins, placements, tablecloths, table runners, serving pieces/dishes, and containers and baskets typically used on kitchen countertops and kitchen/dining room tables (excluding other linens, containers and baskets not typically used on kitchen countertops and kitchen/dining room tables); formed metal, glass, resin, ceramic and wood indoor home decorative products;

4

decorative garden accessories; and Christmas and other seasonal decorations and accessories. Limited License Agreement (License Summary) § B. However, as described below, the product categories as to which Meredith granted HIG an *exclusive limited license* are much narrower than the above.

16. The license grant to HIG and Meredith's permission for HIG to continue to use the Meredith Marks is expressly "subject to" HIG's compliance with the terms and conditions of the Agreement, including the provisions for payment of royalties. Terms and Conditions § 1.1.1.

17. In consideration of the license grant, the Limited License Agreement requires HIG to pay certain minimum royalties to Meredith ("Guaranteed Annual Minimum Royalty") in specific amounts and according to the terms set forth in the Agreement. License Summary § 2. The Limited License Agreement further requires HIG to pay Meredith royalties calculated on net sales of licensed products, based on written reports, which HIG is required to provide to Meredith. License Summary § 3.

## C. Highland Capital's Purchase Of A Majority Interest In HIG And The Subsequent Diminished Use Of And Commitment To The Better Homes And Gardens Brand.

18. Highland Capital Management, L.P. ("Highland") is a Dallas-based venture capital fund and distressed debt hedge fund. In approximately January 2006, Highland acquired the outstanding debt of HIG, which it then converted to a majority shareholder position.

19. According to The Dallas Morning News, Highland is a demanding firm known for putting intense pressure on the companies in which it invests, and employing "aggressive legal tactics" to further its business interests by "wear[ing] down its adversaries." Those tactics reportedly include "filing numerous lawsuits and forcing troubled companies into involuntary bankruptcy" if management does not promptly respond to its demands. See *High Intensity Pays Off For Highland Capital*, Dallas Morning News, September 2, 2006.

5

20.     Since Highland assumed a majority ownership of HIG, HIG has steadily

decreased its use of and reliance on the Meredith Marks as a means to differentiate its products

and drive business. Examples include:

- ■   In January 2007 HIG communicated to Meredith that HIG would develop no new
  home décor products using the Meredith Marks, which are at the core of HIG's
  products, nor no new crafting products, another important category. Rather, HIG
  chose to limit Meredith Marks branded products to the categories of outdoor
  living and entertaining.

- ■   The number of products promoted using the Meredith Marks presented in HIG's
  quarterly catalogs has steadily diminished, from a high of 182 in the Early Spring
  2006 catalog (the then-current catalog for consultants under development when
  HIG current management team/Highland became involved) to 111 products
  promoted using the Meredith Marks in Spring 2007 catalog, to just 89 products
  promoted using the Meredith Marks in the Spring 2008 catalog.

- ■   In January 2008, HIG communicated to Meredith that the candles, potpourri, and
  lotions (so-called "consumables") branded with the Meredith Marks would be
  removed from the BETTER HOMES AND GARDENS® line.

- ■   At the annual training seminar held by HIG for their design consultants, which is
  attended by thousands of their most committed consultants, HIG has steadily
  decreased the promotion and prominence of products branded with the Meredith
  Marks. From 2004-2006, Better Homes and Gardens' representatives had a
  significant presence and role at the annual seminar, including formally presenting
  to attendees, product demonstrations, and logo/brand presence. In 2007 and 2008,
  Better Homes and Gardens' representatives had no formal role to play at the
  annual seminar and our branding and presence was significantly diminished.

## D.     HIG's Breach Of The Limited License Agreement.

21.     Pursuant to the Limited License Agreement, for calendar year 2007 HIG was

required to pay a Guaranteed Annual Minimum Royalty.     License Summary ¶ G.

Notwithstanding the express terms of the Agreement, HIG has failed to pay one million dollars

($1,000,000) of its Guaranteed Annual Minimum Royalty for its use of the Meredith Marks

during 2007, which was due as of January 30, 2008. It has also failed to provide the written

reports, as required, that would enable Meredith to determine whether any additional royalties

are due.

6

22.     On February 8, 2008, during a telephone conversation initiated by Meredith with HIG executives Brian Hermes (Vice President and General Counsel) and Ed Moseley (Vice President of Strategy and Restructuring) to discuss HIG's failure to tender the $1 million payment that HIG owes Meredith, these representatives stated that it was Highland that had directed HIG not to make the payment.  They further stated that they had been instructed by Highland to renegotiate the Limited License Agreement between HIG and Meredith and to inform Meredith that, unless Meredith is willing to renegotiate the HIG Agreement, Highland will force HIG into bankruptcy and convert the amounts owed to an unsecured claim in bankruptcy.

23.     On February 8, 2008, Meredith provided HIG formal notice of its default under the Limited License Agreement and demanded the delinquent payment and report by noon, February 13, 2008.

24.     In a letter dated February 13, 2008, faxed at 12:27 p.m. on February 13, 2008, HIG provided two bases for its failure to pay the money it owes Meredith.  It asserted that Meredith breached the Agreement by failing to provide "a link to Home Interiors' website on *www. bhg.com*" and "by recently entering into a licensing agreement with Wal-Mart."  HIG further claimed that these actions "made it very difficult for [HIG] to procure sufficient Net Sales to meet its Annual Minimum Royalty Payments or to otherwise profit under the Contract."

25.     These assertions are false.  HIG made these assertions solely as a pretext in an effort to avoid its payment obligations under the Limited License Agreement.

26.     HIG's assertion that Meredith failed to provide "a link to Home Interiors' website on *www. bhg.com*." is simply wrong.  Although HIG and Meredith entered into the Limited License Agreement in June 2003, HIG has never previously complained about the absence of

such a link, and for good reason. As easily verified by accessing Meredith's website at BHG.com, the link to HIG is the first one listed after "Brand Licensing Partners" at the bottom of the first page. A copy of the first page on the BHG.com website and the linked page to HIG are submitted herewith as Exhibit 5.

27.    Second, the pretextual nature of the assertion that Meredith breached the Limited Licensing Agreement by entering into the agreement with Wal-Mart is established by the fact that the terms of the Wal-Mart agreement are confidential. Consequently, HIG does not know what specific product categories are covered by the Wal-Mart agreement or under what terms. Moreover, the Wal-Mart agreement does not contemplate that any products branded with the Meredith Marks will be offered for sale until the Fall of 2008. HIG has refused nonetheless to pay Meredith the sums it rightly owes, while continuing to use the Meredith Marks.

28.    Moreover, HIG's assertion is false. In Section J(1) of the Limited License Agreement, as amended, Meredith agreed (subject to all the terms and conditions contained in the Agreement) not to "license the Branding Elements for use within the Territory . . . (c) by any third party manufacturer, wholesaler, direct marketer, or retailer for use on products within the categories set forth in Section B" of the License summary. However, as set forth in the next paragraph, the exclusivity grant is significantly limited by the numerous exceptions contained in Section J(1).

29.    In fact, HIG's exclusive rights are very narrow and limited. When read together, Sections B and J(1) (subject to all the terms and conditions contained in the Agreement) provide that Meredith will not license products in the following limited categories:

> a.    "candles" (License Summary § B), **but no restrictions on licensing as to "product lines in which candles may be a part but not more than 50% of the quantity of items in the line"** (November 13, 2006 Amendment § (J(1)(a)) (emphasis added);

8

b.    "clocks" (License Summary § B);

c.    "pre-framed and unframed, non-photographic wall artwork and decorative mirrors" (License Summary § B), **but no restrictions on licensing as to "wall artwork and mirrors primarily intended for indoor use"** (November 13, 2006 Amendment § (J(1)(b))) (emphasis added);

d.    "artificial florals" (License Summary § B);

e.    "tableware" (License Summary § B) (includes "dishes, silverware, napkins, placemats, tablecloths, table runners, serving pieces/dishes, and containers and baskets typically used on kitchen countertops and kitchen/dinning room tables. Tableware would not include other linens, containers, and baskets typically used on kitchen countertops and kitchen/dining room table" (License Summary § B)), **but no restrictions on licensing as to "product lines in which tableware may be a part but not more than 50% of the quantity of items in the line"** (November 13, 2006 Amendment § (J(1)(c)) (emphasis added); and

f.    "decorative garden accessories" (License Summary § B), **but no restrictions as to "product lines in which decorative garden accessories, potpourri, reed diffusers and room fragrance may be a part but not more than 50% of the quantity of items in the line"** (November 13, 2006 Amendment § (J(1)(d)) (emphasis added);

30.    Meredith did not license Wal-Mart to brand any products with the Meredith Marks that violated the above narrow and limited exclusivity commitment to HIG. More specifically, Meredith has not authorized Wal-Mart to use the Meredith Marks in connection with: (i) clocks or artificial florals; (ii) the product category consisting of pre-framed and unframed, non-photographic wall artwork and decorative mirrors (excluding wall artwork and mirrors primarily intended for indoor use); or (iii) any one of the following categories where the Meredith-branded products in each such category would constitute more than 50% of the quantity of the items in the Meredith-branded product line: (a) candles; (b) tableware (as defined above); or (c) decorative garden accessories, potpourri, reed diffusers, and room fragrance.

9

31.    Wal-Mart has confirmed that its understanding and intent with respect to the scope of its license agreement with Meredith is consistent with the understanding and intent of Meredith.

32.    HIG's Answer and Counterclaim filed in this case and its correspondence grossly overstate the extent to which the Limited License Agreement grants HIG exclusive rights to use the Meredith Marks.  For example, without having ever seen the license agreement between Meredith and Wal-Mart, HIG baldly alleges in its February 13 letter that "Wal-Mart has been licensed to sell prohibited items, including:  "(1) clocks; (2) outdoor wall artwork and mirrors; (3) artificial florals; and (4) 'product lines' in which decorative candles, garden accessories, tableware, potpourri, reed diffusers, and room fragrances constitute more than 50% of the items in the line."

33.    HIG's letter mischaracterizes the Limited License Agreement.  Among other things, the Limited License Agreement does not provide that "candles, [decorative] garden accessories, tableware" etc. should be aggregated to determine whether collectively they constitute more than 50% of the Meredith-branded product line and are thereby excluded from licensing restrictions.  Rather, as established above, each of those product categories (e.g., candles, decorative garden accessories, and tableware) is independently considered, and there are no licensing restrictions if each *independently* constitutes "not more than 50% of the quantity of items in the [Meredith-branded] line."  See, e.g., November 13, 2006 Amendment §§ (J(1)(a), (c), and (d).

34.    Meredith has never authorized the use of its Marks by Wal-Mart in a manner that would violate even HIG's strained characterization of the Agreement, much less the rights actually conferred upon HIG pursuant to the express language of the Agreement.  Put simply,

10

Meredith has not authorized Wal-Mart to engage in any branding of products in a manner that would violate the terms of the Limited License Agreement.

35.     In addition, although Meredith publicly announced that it had entered into a licensing agreement with Wal-Mart on October 23, 2007 (as alleged by HIG in its pleadings), the first time HIG *ever* asserted that the Wal-Mart agreement violated HIG's exclusive rights was *after* it failed to pay Meredith the $1,000,000 that it now owes for its past use of the Meredith Marks.

36.     Finally, contrary to HIG's claims in its February 13, 2008 letter that Meredith's conduct "has made it very difficult for [HIG] to procure sufficient Net Sales to meet its Annual Minimum Royalty Payments, HIG expressly confirmed in a telephone conversation on February 8, 2008 that HIG has *not* experienced any decline in sales which it attributes to the brand licensing agreement between Meredith and Wal-Mart.

37.     In an effort to avoid further litigation, including the necessity for the instant motion, Meredith has reiterated its demands that HIG deliver its delinquent payment and reports in letters dated February 8, 15, and March 28, 2008.

38.     Despite Meredith's repeated demands for payment and reports pursuant to the Agreement, and despite HIG's representations that it seeks to resolve the issue of its delinquent payment and produce the requested reports, nearly eight weeks have passed since these representations were first made and HIG has made no further efforts to meet its contractual obligations. Moreover, despite such failures, HIG impermissibly continues to use the Meredith Marks in connection with the promotion and sale of its products to the public, and has given no indication that it intends to cease doing so.

## E.   **HIG's Use Of The Meredith Marks Will Cause Confusion.**

39.   HIG continues to promote numerous products using the Meredith Marks. These products include, among others the following: Apple-a-Day Cookie Jar; Artesia Hummingbird Feeder; Artisan Stemware; Audrey Hot and Cold Dips; Audrey Serving Collection (3pc pedestals, bowls); Ava Tiered Stand; Barona Canister Set; Becker Outdoor Furniture (table and chairs); Bella Trivets; Benton Basket Tree; Blossom Place Card Holders; Casserole Sets; Catalina Chandelier; Celebrations Cupcake Tree; Ceramic Fruit Containers; Copper Party Lights; Decorating Ribbon; Delaney Hanging Basket Stand; Eclectic Cross Windchime; Farmhouse Bucket; Francisco Orbs; Galena Decorative Tray; Garden Shepherd's Hooks; Gilded Table Lamp; Granada Chandelier/Centerpiece; Grand Hurricane; Grayson Tiered Pedestal Stand; Grove Hill Chargers; Hadley Garden Stakes; Hand Lotion, Scrub, and Therapy; Ivory Dinnerware; Ivory Serving Bowl; Ivory Serving Platter; Lawrence Tiered Serving Stand; Linley Serving Tray; Melrose Hurricane; Mirrored Leaf Sconce; Monterrey Iron Crosses; Parker Garden Cart; Peyton Centerpiece Bowl; Porter Beverage Caddy; Portland Candle Pedestals; Potpourri; Provence Lazy Susan; Reed Diffusers; Rosetta Stemware; Scooter The Rooster; Sculpted Glass Vessels; Soleil Mosaic Birdbath; Soleil Mosaic Lantern; Sonoma Villa Canisters, Serving Bowls; Sonoma Villa Salt-N-Pepper Shakers; Sonoma Villa Spreaders; Sonoma Villa Teapot; Sonoma Villa Utensil Holder; Soy Candles; Spiral Wall Hanging; The Great Divide Bowl; Tiered Square Centerpiece; Traditions Cookbook Stand; Vintage Find Birdhouse; Wooden Rice Basket; and Zest Mixing bowls. Again, however, as described below, the product categories as to which Meredith granted HIG an *exclusive limited license* are much narrower than the above.

12

40.    HIG's use of the Meredith Marks is unauthorized, and will cause confusion in the consuming public.    Such use necessarily implies that Meredith continues to authorize the connection between the Meredith Marks and HIG's products, when such is not in fact the case.

F.    **HIG's Conduct Is Causing Meredith Irreparable Injury.**

41.    Defendant HIG has conceded that "the reputation of and goodwill associated with the Branding Elements," defined in Exhibit A to the Agreement as the BETTER HOMES AND GARDENS® mark and the Plaid Checker Board design mark, i.e., the Meredith Marks, "are among Meredith's most valued assets." Terms and Conditions § 1.5.3.  Indeed, HIG agreed to pay Meredith millions of dollars for permission to use the Meredith Marks.

42.    Recognizing these principles, in Section 11 of the Terms and Conditions of the Agreement, Defendant HIG has acknowledged that, if HIG breached a material term of the Limited Licensing Agreement, Meredith will suffer irreparable injury and that Meredith has a right to an injunction upon the posting of a $10,000 bond:

> Licensee [HIG] agrees that **Meredith will have no adequate remedy at law** if **Licensee breaches a material term of this Agreement**.  As such, Licensee agrees that, in addition to any other remedy available to Meredith, **Meredith will have the right to have any such breach restrained by equitable relief by posting a bond in the amount of $10,000.00**.

Terms and Conditions § 11 (emphasis added).

43.    HIG's failure to pay Meredith at least $1,000,000 that it owes and its failure to provide the required reports constitutes a material breach.

G.    **An Injunction Will Not Substantially Harm HIG Because It Can Continue To Operate Its Business.**

44.    As established by the HIG catalog, HIG markets numerous products that it has not branded with the Meredith Marks.  Moreover, nothing prevents HIG from selling unbranded

products in the categories previously branded with the Meredith Marks, or selling its products branded by another mark.

45.    Further, as noted above, since Highland acquired a majority ownership, HIG has steadily reduced the number of products it promotes using the Meredith Marks. The number of products that HIG promotes using the Meredith Marks in its quarterly catalogs has steadily diminished, from a high of 182 in the Early Spring 2006 catalog (shortly after Highland acquired its equity position in HIG), to 111 products promoted using the Meredith Marks in Spring 2007 catalog, to 89 products promoted using the Meredith Marks in the Spring 2008 catalog. A copy of the relevant pages from the Spring 2008 catalog is attached as Exhibit 6.

Further the declarant sayeth not.

14

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this first day of April 2008.

_____
David Johnson

**EXHIBIT 1**

EXHIBIT 1

| Mark | Goods/Services | Reg. No./ Reg. Date |
|---|---|---|
|  | Entertainment services in nature of contests in the fields of gardening, home décor, home improvement and cooking. | 3326079<br><br>Oct. 30, 2007 |
| BETTER HOMES AND GARDENS | Accent pillows.<br><br>Comforters, bed skirts, pillow shams of various sizes, curtains, valences, duvet covers, futon covers and day bed covers, all made of fabric. | 3277245<br><br>Aug. 7, 2007 |
| BETTER HOMES AND GARDENS | Recipe cards. | 3256938<br><br>June 26, 2007 |
|  | Providing recipe development; providing testing, research and analysis of recipes, food preparation, cooking methods and providing information related to such testing, research and analysis. | 3234768<br><br>April 24, 2007 |
|  | Publications, namely magazines, books, booklets and pamphlets relating to food, cooking and the art of food preparation; recipe cards. | 3218766<br><br>March 13, 2007 |
| BETTER HOMES AND GARDENS | Fabric for the manufacture of home décor and bedding. | 3166378<br><br>Oct. 31, 2006 |
| BETTER HOMES AND GARDENS | Cheese spreaders.<br><br>Lighted trees, garlands and wreaths, electric lights for Christmas trees, electric holiday lights and light sets.<br><br>Photo frames and plaques; holiday ornaments other than tree ornaments made from bone, ivory, plaster, plastic, wax or wood.<br><br>Servingware, namely platters, cake plates, cookie plates, dessert plates, teapots, cups, mugs, cookie jars, compote bowls, wine bottle chillers, all made from glass, china, porcelain or ceramic; candle holders, bells, holiday ornaments other than tree ornaments, all made from glass, china, porcelain or ceramic; cutting boards.<br><br>Garlands made from fabric; fabric mantel scarves.<br><br>Artificial trees, garlands, wreaths; artificial indoor/outdoor topiaries; artificial floral arrangements.<br><br>Artificial Christmas trees, garlands and wreaths; Christmas | 3091547<br><br>May 9, 2006 |

1

| | tree toppers; Christmas stockings; Christmas tree skirts; Christmas stocking hangers. | |
|---|---|---|
| BETTER HOMES AND GARDENS | Holiday ornaments made from metal not tree ornaments. Holiday ornaments made from bone, ivory, plaster, plastic, wax or wood not tree ornaments. Holiday ornaments made from china, crystal, glass, porcelain, terracotta not tree ornaments. Holiday ornaments made from fabric not tree ornaments. | 3091375 May 9, 2006 |
| BETTER HOMES AND GARDENS | Christmas tree ornaments. | 3091374 May 9, 2006 |
| BETTER HOMES AND GARDENS | Candles. | 2921793 Jan. 25, 2005 |
| BETTER HOMES AND GARDENS | Earthenware tableware, namely plates, saucers, cups and bowls; earthenware storage containers, namely canisters; earthenware servingware; earthenware candle holders; earthenware bakeware; glassware namely drinkware, pitchers, vases; candle holders and sconces not of precious metal; indoor decorative products namely vases, decorative flower pots all made of resin; baskets made of wicker, cane, or reed; decorative outdoor accessories, namely wind chimes. | 2979393 July 26, 2005 |
| BETTER HOMES AND GARDENS | Computer software in the field of home design and home plans. | 2866924 July 27, 2004 |
| BETTER HOMES AND GARDENS | Providing mail order wine club services. | 3316564 Oct. 23, 2007 |
| BETTER HOMES & GARDENS | Periodically printed publications, namely magazines featuring articles and information of general interest subject matter. | 2802181 Jan. 6, 2004 |
| BETTER HOMES AND GARDENS | Water gardening products, namely, fountains, fountain pumps, fountain nozzles, and pond pumps. Hoses for agricultural and horticultural purposes. Lawn and garden sprinklers; sprinkler accessories, namely, spikes, nozzles, faucet connections and shower wands; plant and flower pots; lawn and garden hose nozzles and hose attachments. | 2868633 Aug. 3, 2004 |
| BETTER HOMES AND GARDENS | Decorative metal hooks and brackets. Tote bags; patio and market umbrellas. CL 20 - Hand-operated non-metal hose reels; cushions; and lawn furniture. | 2701851 April 1, 2003 |
| BETTER HOMES AND GARDENS | Prerecorded video cassettes featuring homemaking cooking, decorating, gardening, plant care, home improvement, and other topics of interest to home owners. | 1581260 Feb. 6, 1990 |

| | | |
|---|---|---|
| | | Incontestable |
| BETTER HOMES AND GARDENS | Calendars. | 1573340<br>Dec. 26, 1989<br>Incontestable |
| BETTER HOMES AND GARDENS | Publications, namely, books. | 1496734<br>July 19, 1988<br>Incontestable |
| BETTER HOMES AND GARDENS | Printed construction plans for home and family crafts and projects.<br>Needle work kits principally composed of thread, yarn and fabric containing needlepoint patterns.<br>Hobby kits for the construction of dolls.<br>Book club services; direct sales services of craft items by the home party plan; catalogue mail order services in the field of craft items useful in home decorating and furnishing. | 1155530<br>May 26, 1981<br>Incontestable |
|  | Real estate brokerage services. | 1127617<br>Dec. 11, 1979<br>Incontestable |
| BETTER HOMES AND GARDENS | Real estate brokerage services. | 1127616<br>Dec. 11, 1979<br>Incontestable |
| BETTER HOMES AND GARDENS | Monthly magazine. | 0754656<br>Aug. 13, 1963<br>Incontestable |
|  | Monthly magazine. | 0721355<br>Sept. 12, 1961<br>Incontestable |
|  | Monthly magazine. | 0203616<br>Sept. 22, 1925<br>Incontestable |

Int. Cls.: 20 and 24

Prior U.S. Cls.: 2, 13, 22, 25, 32, 42, and 50

Reg. No. 3,277,245

**United States Patent and Trademark Office**     Registered Aug. 7, 2007

## TRADEMARK
## PRINCIPAL REGISTER

### BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: ACCENT PILLOWS, IN CLASS 20 (U.S. CLS.
2, 13, 22, 25, 32 AND 50).

FIRST USE 1-1-2006; IN COMMERCE 1-1-2006.

FOR: COMFORTERS, BED SKIRTS, PILLOW
SHAMS OF VARIOUS SIZES, CURTAINS, VALEN-
CES, DUVET COVERS, FUTON COVERS AND DAY
BED COVERS, ALL MADE OF FABRIC, IN CLASS 24
(U.S. CLS. 42 AND 50).

FIRST USE 1-1-2006; IN COMMERCE 1-1-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 1,573,340,
AND OTHERS.

SN 78-701,518, FILED 8-26-2005.

BARBARA A. GOLD, EXAMINING ATTORNEY

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, and 50

**United States Patent and Trademark Office**

Reg. No. 3,256,938

Registered June 26, 2007

## TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-TION)

1716 LOCUST STREET

DES MOINES, IA 503093023

FOR: RECIPE CARDS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 9-10-2006; IN COMMERCE 9-10-2006.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 1,573,340, AND OTHERS.

SN 78-540,251, FILED 12-30-2004.

MICHELE SWAIN, EXAMINING ATTORNEY

Int. Cl.: 24

Prior U.S. Cls.: 42 and 50

United States Patent and Trademark Office

Reg. No. 3,166,378
Registered Oct. 31, 2006

## TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORATION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: FABRIC FOR THE MANUFACTURE OF HOME DÉCOR AND BEDDING, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 10-1-2005; IN COMMERCE 10-1-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 1,573,340, AND OTHERS.

SN 78-558,963, FILED 2-2-2005.

SANI KHOURI, EXAMINING ATTORNEY

Int. Cls.: 8, 11, 20, 21, 24, 26, and 28

Prior U.S. Cls.: 2, 13, 21, 22, 23, 25, 28, 29, 30, 31, 32, 33, 34, 37, 38, 39, 40, 42, 44, and 50

**United States Patent and Trademark Office**

Reg. No. 3,091,547

Registered May 9, 2006

## TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: CHEESE SPREADERS, IN CLASS 8 (U.S. CLS. 23, 28 AND 44).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: LIGHTED TREES, GARLANDS AND WREATHS, ELECTRIC LIGHTS FOR CHRISTMAS TREES, ELECTRIC HOLIDAY LIGHTS AND LIGHT SETS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: PHOTO FRAMES AND PLAQUES; HOLI-DAY ORNAMENTS OTHER THAN TREE ORNA-MENTS MADE FROM BONE, IVORY, PLASTER, PLASTIC, WAX OR WOOD, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: SERVINGWARE, NAMELY PLATTERS, CAKE PLATES, COOKIE PLATES, DESSERT PLATES, TEAPOTS, CUPS, MUGS, COOKIE JARS, COMPOTE BOWLS, WINE BOTTLE CHILLERS, ALL MADE FROM GLASS, CHINA, PORCELAIN OR CERAMIC; CANDLE HOLDERS, BELLS, HOLIDAY ORNAMENTS OTHER THAN TREE ORNAMENTS, ALL MADE FROM GLASS, CHINA, PORCELAIN

OR CERAMIC; CUTTING BOARDS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33. 40 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: GARLANDS MADE FROM FABRIC; FAB-RIC MANTEL SCARVES , IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: ARTIFICIAL TREES, GARLANDS, WREATHS; ARTIFICIAL INDOOR/OUTDOOR TO-PIARIES; ARTIFICIAL FLORAL ARRANGEMENTS, IN CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: ARTIFICIAL CHRISTMAS TREES, GAR-LANDS AND WREATHS; CHRISTMAS TREE TOP-PERS; CHRISTMAS STOCKINGS; CHRISTMAS TREE SKIRTS; CHRISTMAS STOCKING HANGERS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 78-540,266, FILED 12-30-2004.

JIM RINGLE, EXAMINING ATTORNEY

Int. Cls.: 6, 20, 21, and 24

Prior U.S. Cls.: 2, 12, 13, 14, 22, 23, 25, 29, 30, 32, 33, 40, 42, and 50

**United States Patent and Trademark Office**

Reg. No. 3,091,375
Registered May 9, 2006

# TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: HOLIDAY ORNAMENTS MADE FROM
METAL NOT TREE ORNAMENTS, IN CLASS 6
(U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: HOLIDAY ORNAMENTS MADE FROM
BONE, IVORY, PLASTER, PLASTIC, WAX OR
WOOD NOT TREE ORNAMENTS, IN CLASS 20
(U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: HOLIDAY ORNAMENTS MADE FROM
CHINA, CRYSTAL, GLASS, PORCELAIN, TERRA-
COTTA NOT TREE ORNAMENTS, IN CLASS 21 (U.S.
CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

FOR: HOLIDAY ORNAMENTS MADE FROM
FABRIC NOT TREE ORNAMENTS, IN CLASS 24
(U.S. CLS. 42 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 1,573,340,
AND OTHERS.

SN 78-472,706, FILED 8-24-2004.

JIM RINGLE, EXAMINING ATTORNEY

Int. Cl.: 28

Prior U.S. Cls.: 22, 23, 38, and 50

**United States Patent and Trademark Office**

**Reg. No. 3,091,374**
Registered May 9, 2006

## TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: CHRISTMAS TREE ORNAMENTS, IN
CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 12-1-2004; IN COMMERCE 12-1-2004.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 1,573,340,
AND OTHERS.

SN 78-472,690, FILED 8-24-2004.

JIM RINGLE, EXAMINING ATTORNEY

**Int. Cl.: 4**

**Prior U.S. Cls.: 1, 6, and 15**

**United States Patent and Trademark Office**

**Reg. No. 2,921,793**
Registered Jan. 25, 2005

## TRADEMARK
## PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
 TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

 FOR: CANDLES, IN CLASS 4 (U.S. CLS. 1, 6 AND
15).

 FIRST USE 2-1-2004; IN COMMERCE 2-1-2004.

 OWNER OF U.S. REG. NOS. 203,616, 2,802,181,
AND OTHERS.

 SN 78-314,701, FILED 10-16-2003.

 ANN E. SAPPENFIELD, EXAMINING ATTORNEY

**Int. Cl.: 21**

**Prior U.S. Cls.: 2, 13, 23, 29, 30, 33, 40, and 50**

**Reg. No. 2,979,393**

## United States Patent and Trademark Office

Registered July 26, 2005

## TRADEMARK
### PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: EARTHENWARE TABLEWARE, NAMELY PLATES, SAUCERS, CUPS AND BOWLS; EARTHENWARE STORAGE CONTAINERS, NAMELY CANISTERS; EARTHENWARE SERVINGWARE; EARTHENWARE CANDLE HOLDERS; EARTHENWARE BAKEWARE; GLASSWARE NAMELY DRINKWARE, PITCHERS, VASES; CANDLE HOLDERS AND SCONCES NOT OF PRECIOUS METAL;

INDOOR DECORATIVE PRODUCTS NAMELY VASES, DECORATIVE FLOWER POTS ALL MADE OF RESIN; BASKETS MADE OF WICKER, CANE, OR REED; DECORATIVE OUTDOOR ACCESSORIES, NAMELY WIND CHIMES, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 2-1-2004; IN COMMERCE 2-1-2004.

SN 78-314,690, FILED 10-16-2003.

DAVID TAYLOR, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

## United States Patent and Trademark Office

Reg. No. 2,866,924
Registered July 27, 2004

## TRADEMARK
### PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
   TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: COMPUTER SOFTWARE IN THE FIELD OF
HOME DESIGN AND HOME PLANS, IN CLASS 9
(U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-23-2003; IN COMMERCE 6-23-2003.

SER. NO. 78-298,131, FILED 9-9-2003.

DARRYL SPRUILL, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,316,564
Registered Oct. 23, 2007

## SERVICE MARK
## PRINCIPAL REGISTER

### BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)

1716 LOCUST STREET

DES MOINES, IA 503093023

FOR: PROVIDING MAIL ORDER WINE CLUB
SERVICES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 5-15-2006; IN COMMERCE 5-15-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 754,656, 2,701,851 AND
OTHERS.

SER. NO. 77-099,985, FILED 2-6-2007.

LAURIE KAUFMAN, EXAMINING ATTORNEY

**Int. Cl.: 16**

**Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38 and 50**

**United States Patent and Trademark Office**

**Reg. No. 2,802,181**
**Registered Jan. 6, 2004**

## TRADEMARK
## PRINCIPAL REGISTER

## BETTER HOMES & GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: PERIODICALLY PRINTED PUBLICA-
TIONS, NAMELY MAGAZINES FEATURING AR-
TICLES AND INFORMATION OF GENERAL

INTEREST SUBJECT MATTER , IN CLASS 16 (U.S.
CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 9-10-2002; IN COMMERCE 9-10-2002.

SER. NO. 76-498,438, FILED 3-18-2003.

DAVID TAYLOR, EXAMINING ATTORNEY

Int. Cls.: 11, 17 and 21

Prior U.S. Cls.: 1, 2, 5, 12, 13, 21, 23, 29, 30, 31, 33, 34, 35, 40 and 50

**United States Patent and Trademark Office**

Reg. No. 2,868,633
Registered Aug. 3, 2004

## TRADEMARK
## PRINCIPAL REGISTER

# BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: WATER GARDENING PRODUCTS, NAME-LY, FOUNTAINS, FOUNTAIN PUMPS, FOUNTAIN NOZZLES, AND POND PUMPS , IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 1-1-2002; IN COMMERCE 1-1-2002.

FOR: HOSES FOR AGRICULTURAL AND HOR-TICULTURAL PURPOSES, IN CLASS 17 (U.S. CLS. 1, 5, 12, 13, 35 AND 50).

FIRST USE 1-1-2002; IN COMMERCE 1-15-1994.

FOR: LAWN AND GARDEN SPRINKLERS; SPRINKLER ACCESSORIES, NAMELY, SPIKES, NOZZLES, FAUCET CONNECTIONS AND SHOW-ER WANDS; PLANT AND FLOWER POTS; LAWN AND GARDEN HOSE NOZZLES AND HOSE AT-TACHMENTS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 1-1-2002; IN COMMERCE 1-15-1994.

OWNER OF U.S. REG. NOS. 203,616, 2,049,306 AND OTHERS.

SER. NO. 76-494,947, FILED 2-28-2003.

DARRYL SPRUILL, EXAMINING ATTORNEY

Int. Cls.: 6, 18 and 20

Prior U.S. Cls.: 1, 2, 3, 12, 13, 14, 22, 23, 25, 32, 41 and 50

**United States Patent and Trademark Office**

Reg. No. 2,701,851
Registered Apr. 1, 2003

## TRADEMARK
## PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: DECORATIVE METAL HOOKS AND
BRACKETS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 2-15-2001; IN COMMERCE 2-15-2001.

FOR: TOTE BAGS; PATIO AND MARKET UM-
BRELLAS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 1-15-1999; IN COMMERCE 1-15-1999.

FOR: HAND-OPERATED NON-METAL HOSE
REELS; CUSHIONS; AND LAWN FURNITURE, IN
CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 1-15-1994; IN COMMERCE 1-15-1994.

OWNER OF U.S. REG. NOS. 1,912,521, 1,926,177,
AND 2,049,306.

SER. NO. 76-276,827, FILED 6-27-2001.

MICHAEL KAZAZIAN, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cl.: 21

## United States Patent and Trademark Office

Reg. No. 1,581,260
Registered Feb. 6, 1990

## TRADEMARK
### PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPO-
RATION)
1716 LOCUST STREET
DES MOINES, IA 50336

FOR: PRERECORDED VIDEO CASSETTES
FEATURING HOMEMAKING COOKING,
DECORATING, GARDENING, PLANT CARE,
HOME IMPROVEMENT, AND OTHER TOPICS
OF INTEREST TO HOME OWNERS, IN CLASS
9 (U.S. CL. 21).

FIRST USE 9–15–1987; IN COMMERCE
9–15–1987.

OWNER OF U.S. REG. NOS. 203,616, 1,413,302
AND OTHERS.

SER. NO. 73–807,999, FILED 6–20–1989.

CATHY THORNSTEINSON, EXAMINING AT-
TORNEY

Int. Cl.: 16

Prior U.S. Cls.: 37 and 38

## United States Patent and Trademark Office

Reg. No. 1,573,340
Registered Dec. 26, 1989

## TRADEMARK
### PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPO-
RATION)
1716 LOCUST STREET
DES MOINES, IA 50336

FOR: CALENDARS, IN CLASS 16 (U.S. CLS. 37 AND 38).

FIRST USE 4–1–1988; IN COMMERCE 4–1–1988.

OWNER OF U.S. REG. NOS. 203,616, 1,413,302 AND OTHERS.

SER. NO. 73–798,817, FILED 5–9–1989.

MARY C. MACK, EXAMINING ATTORNEY

Int. Cl.: 16

Prior U.S. Cl.: 38

## United States Patent and Trademark Office

Reg. No. 1,496,734
Registered July 19, 1988

## TRADEMARK
### PRINCIPAL REGISTER

## BETTER HOMES AND GARDENS

MEREDITH CORPORATION (IOWA CORPO-
  RATION)
1716 LOCUST STREET
DES MOINES, IA 50336

  FOR: PUBLICATIONS, NAMELY, BOOKS, IN
CLASS 16 (U.S. CL. 38).
  FIRST    USE    0–0–1930;    IN    COMMERCE
0–0–1930.

OWNER OF U.S. REG. NOS. 203,616, 1,389,038
AND OTHERS.

SER. NO. 692,384, FILED 10–29–1987.

RONALD R. SUSSMAN, EXAMINING ATTOR-
  NEY

Int. Cls.: 16, 26, 28, 39 and 42

Prior U.S. Cls.: 22, 38, 40, 101 and 105

## United States Patent and Trademark Office

**Reg. No. 1,155,530**
Registered May 26, 1981

## TRADEMARK
## SERVICE MARK
**Principal Register**

## BETTER HOMES AND GARDENS

Meredith Corporation (Iowa corporation)
1716 Locust St.
Des Moines, Iowa 50336

For: PRINTED CONSTRUCTION PLANS FOR HOME AND FAMILY CRAFTS AND PROJ-ECTS, in CLASS 16 (U.S. Cl. 38).

First use 1963; in commerce 1963.

For: NEEDLE WORK KITS PRINCIPALLY COMPOSED OF THREAD, YARN AND FABRIC CONTAINING NEEDLEPOINT PATTERNS, in CLASS 26 (U.S. Cl. 40).

First use Jan. 20, 1976; in commerce Jan. 20, 1976.

For: HOBBY KITS FOR THE CONSTRUC-TION OF DOLLS, in CLASS 28 (U.S. Cl. 22).

First use Jan. 20, 1976; in commerce Jan. 20, 1976.

For: SERVICES—NAMELY, MAKING TRAV-EL ARRANGEMENTS, in CLASS 39 (U.S. Cl. 105).

First use Jan. 18, 1974; in commerce Jan. 18, 1974.

For: BOOK CLUB SERVICES; DIRECT SALES SERVICES OF CRAFT ITEMS BY THE HOME PARTY PLAN; CATALOGUE MAIL OR-DER SERVICES IN THE FIELD OF CRAFT ITEMS USEFUL IN HOME DECORATING AND FURNISHING, in CLASS 42 (U.S. Cl. 101).

First use 1965; in commerce 1965.

Owner of U.S. Reg. Nos. 203,616, 1,022,845 and others.

Ser. No. 190,269, filed Oct. 23, 1978.

HENRY S. ZAK, Primary Examiner

Int. Cl.: 35

U.S. Cl.: 101

**Reg. No. 1,127,617**

# U.S. Patent and Trademark Office

Reg. Dec. 11, 1979

## SERVICE MARK
### Principal Register



Meredith Corporation (Iowa corporation)
1716 Locust St.
Des Moines, Iowa 50336

For: Real Estate Brokerage Services —in Class 35. (U.S. Cl. 101).

First use July 27, 1977; in commerce July 27, 1977.
Owner of U.S. Reg. Nos. 203,616, 1,022,845 and others.

Ser. No. 144,127. Filed Oct. 11, 1977.

MARC BERGSMAN, Examiner

**Int. Cl.: 35**

**U.S. Cl.: 101**

**U.S. Patent and Trademark Office**

**Reg. No. 1,127,616**

Reg. Dec. 11, 1979

## SERVICE MARK
### Principal Register

# BETTER HOMES AND GARDENS

Meredith Corporation (Iowa corporation)
1716 Locust St.
Des Moines, Iowa 50336

For: Real Estate Brokerage Services —in Class 35. (U.S. Cl. 101).

First use July 27, 1977; in commerce July 27, 1977.

Ser. No. 144,126. Filed Oct. 11, 1977.

MARC BERGSMAN, Examiner

# United States Patent Office

754,656
Registered Aug. 13, 1963

## PRINCIPAL REGISTER
## Trademark

Ser. No. 154,742, filed Oct. 8, 1962

## BETTER HOMES AND GARDENS

Meredith Publishing Company (Iowa corporation)
1716 Locust St.
Des Moines 3, Iowa

For: MONTHLY MAGAZINE, in CLASS 38.
First use Aug. 21, 1962; in commerce Aug. 21, 1962.
Owner of Reg. Nos. 203,616, 721,355, and others.

# United States Patent Office

**721,355**
Registered Sept. 12, 1961

AFFIDAVIT SEC. 8
ACCEPTED

### PRINCIPAL REGISTER
### Trademark

AFFIDAVIT SEC 15
RECEIVED 11-24-66

Ser. No. 107,030, filed Oct. 24, 1960

## Better Homes
and Gardens

Meredith Publishing Company (Iowa corporation)
1716 Locust St.
Des Moines 3, Iowa

For: MONTHLY MAGAZINE, in CLASS 38.
First use Sept. 3, 1960; in commerce Sept. 3, 1960.
Owner of Reg. Nos. 203,616, 677,116, and others.

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

REGISTRATION NO: 0203616    SERIAL NO: 71/202721    MAILING DATE: 03/20/2006
REGISTRATION DATE: 09/22/1925
MARK: BETTER HOMES AND GARDENS
REGISTRATION OWNER: MEREDITH CORPORATION

**CORRESPONDENCE ADDRESS:**
JOHN S.ZIESER
MEREDITH CORPORATION
1716 LOCUST STREET
DES MOINES, IA 50336

## NOTICE OF ACCEPTANCE
15 U.S.C. Sec. 1058(a)(3)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 8 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1058.

**ACCORDINGLY, THE SECTION 8 AFFIDAVIT IS ACCEPTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
## NOTICE OF RENEWAL
15 U.S.C. Sec. 1059(a)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 9 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1059.

**ACCORDINGLY, THE REGISTRATION IS RENEWED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THE REGISTRATION WILL REMAIN IN FORCE FOR CLASS(ES):**
038.

SMITH, WYE JEAN
PARALEGAL SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

**PLEASE SEE THE REVERSE SIDE OF THIS NOTICE FOR INFORMATION
CONCERNING REQUIREMENTS FOR MAINTAINING THIS REGISTRATION**
ORIGINAL

**REQUIREMENTS FOR MAINTAINING A FEDERAL TRADEMARK REGISTRATION**

I) SECTION 8: AFFIDAVIT OF CONTINUED USE

The registration shall remain in force for 10 years, except that the registration shall be canceled for failure to file an Affidavit of Continued Use under Section 8 of the Trademark Act, 15 U.S.C. Sec. 1058, at the end of each successive 10-year period following the date of registration.

**Failure to file the Section 8 Affidavit will result in the cancellation of the registration.**

**II) SECTION 9: APPLICATION FOR RENEWAL**

The registration shall remain in force for 10 years, subject to the provisions of Section 8, except that the registration shall expire for failure to file an Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C. Sec. 1059, at the end of each successive 10-year period following the date of registration.

**Failure to file the Application for Renewal will result in the expiration of the registration.**

**NO FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS WILL BE SENT TO THE REGISTRANT BY THE PATENT AND TRADEMARK OFFICE. IT IS RECOMMENDED THAT THE REGISTRANT CONTACT THE PATENT AND TRADEMARK OFFICE APPROXIMATELY ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.**

**EXHIBIT 2**

EXHIBIT 2

| Mark | Goods/Services | Serial No. |
|------|----------------|------------|
| BETTER HOMES AND GARDENS | Sleep products, namely, mattresses, spring mattresses, box springs and mattress foundations. | 77/367953 |
| BETTER HOMES AND GARDENS | Paint, namely exterior paint, interior paint, house paint, enamel paint. | 77/367946 |
| BETTER HOMES AND GARDENS | Cut flowers; live flowers; live flower arrangements and wreaths; flower bulbs; flower seeds. | 77/367942 |
| BETTER HOMES AND GARDENS | Musical sound recordings. | 77/367747 |
| BETTER HOMES AND GARDENS | Bedroom furniture, living room furniture, dining room furniture, family room furniture and den furniture. | 77/099958 |
| BETTER HOMES AND GARDENS | Fabric chair pads; and fitted fabric furniture covers.<br><br>Bedding, namely, bed sheets; throws; fabric window coverings, namely, window panels of polyester, cotton, wool, silk, linen, nylon, rayon and blends thereof, and sheers; textile table linens, namely, tablecloths and table coverings; napkins, placemats, all made from fabric; kitchen textiles, namely, towels, dishcloths, potholders, oven mitts, all made from fabric; bath towels; decorative bath towels; hand towels; washcloths; shower curtains. | 77/312566 |
| BETTER HOMES AND GARDENS | Architectural design services for homes; interior and exterior decorating design services; landscape design services. | 77/368239 |
| BETTER HOMES AND GARDENS | Credit card services. | 77/319067 |
| BETTER HOMES AND GARDENS | Rugs, namely area rugs of various sizes, doormats, indoor/outdoor rugs. | 77/312413 |
| BETTER HOMES AND GARDENS | Ready-to-assemble furniture; decorative mirrors; drapery hardware, namely, decorative rods and rings. | 77/312354 |
| BETTER HOMES AND GARDENS | Floor lamps; table lamps; decorative lamps. | 77/312346 |
| BETTER HOMES AND GARDENS | All-purpose food storage containers; all-purpose portable household storage containers; kitchen organization products; butler trays; accent trays; bath accessories, namely cup holders, toothbrush holders, soap dishes, waste baskets. | 77/312370 |
| BETTER HOMES AND GARDENS | Providing information via a website relating to food, cooking and the art of food preparation, decorating, gardening, health, home building and remodeling, shopping, travel, crafts, needlework and other topics of interest to homeowners and families. | 77/234146 |

1

**EXHIBIT 3**

<u>EXHIBIT 3</u>



Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

## United States Patent and Trademark Office

Reg. No. 3,326,079
Registered Oct. 30, 2007

## SERVICE MARK
### PRINCIPAL REGISTER



MEREDITH CORPORATION (IOWA CORPORA-TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: ENTERTAINMENT SERVICES IN NATURE OF CONTESTS IN THE FIELDS OF GARDENING, HOME DECOR, HOME IMPROVEMENT AND COOKING, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 8-15-2005; IN COMMERCE 8-15-2005.

OWNER OF U.S. REG. NOS. 1,366,612 AND 1,897,481.

THE COLOR(S) BLACK, RED AND WHITE IS ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE STYLIZED WORDS "BETTER HOMES AND GARDENS" IN BLACK ABOVE A SQUARE CONTAINING A PLAID OF RED SQUARES, WHITE SQUARES AND SQUARES OF RED AND WHITE COMBINED.

SN 78-608,519, FILED 4-14-2005.

WILLIAM BRECKENFELD, EXAMINING ATTOR-NEY

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

## United States Patent and Trademark Office

Reg. No. 3,234,768

Registered Apr. 24, 2007

## SERVICE MARK
## PRINCIPAL REGISTER



MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: PROVIDING RECIPE DEVELOPMENT;
PROVIDING TESTING, RESEARCH AND ANALY-
SIS OF RECIPES, FOOD PREPARATION, COOKING
METHODS AND PROVIDING INFORMATION RE-
LATED TO SUCH TESTING, RESEARCH AND
ANALYSIS, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 8-15-2005; IN COMMERCE 8-15-2005.

OWNER OF U.S. REG. NOS. 1,366,612 AND
1,897,481.

THE COLORS BLACK, RED, AND WHITE ARE
CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE STYLIZED
WORDS "BETTER HOMES AND GARDENS" IN
BLACK ABOVE A SQUARE CONTAINING A PLAID
OF RED SQUARES, WHITE SQUARES AND
SQUARES OF RED AND WHITE COMBINED.

SN 78-608,197. FILED 4-13-2005.

MARY BOAGNI, EXAMINING ATTORNEY

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, and 50

Reg. No. 3,218,766

## United States Patent and Trademark Office

Registered Mar. 13, 2007

## TRADEMARK
### PRINCIPAL REGISTER



MEREDITH CORPORATION (IOWA CORPORA-
TION)
1716 LOCUST STREET
DES MOINES, IA 503093023

FOR: PUBLICATIONS, NAMELY MAGAZINES,
BOOKS, BOOKLETS AND PAMPHLETS RELATING
TO FOOD, COOKING AND THE ART OF FOOD
PREPARATION; RECIPE CARDS , IN CLASS 16 (U.S.
CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 8-15-2005; IN COMMERCE 8-15-2005.

OWNER OF U.S. REG. NOS. 1,366,212, 2,802,181,
AND OTHERS.

THE COLOR(S) BLACK, RED, AND WHITE IS
ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE STYLIZED
WORDS "BETTER HOMES AND GARDENS" IN
BLACK ABOVE A SQUARE CONTAINING A PLAID
OF RED SQUARE, WHITE SQUARES, AND
SQUARES OF RED AND WHITE COMBINED.

SN 78-608,168, FILED 4-13-2005.

ALLISON HOLTZ, EXAMINING ATTORNEY

**EXHIBIT 4**
**(FILED UNDER SEAL)**

**EXHIBIT 5**

www.bhg.com
Home Page
Screen Shot
March 31, 2008



www.bhg.com
Home Page
Link to Home Interiors web site
Screen Shot
March 31, 2008

## Home and Family Network

Ladies' Home Journal | Parents | Fitness | MORE | MidwestLiving | Country Home | Traditional Home | Bette
Scrapbooks Etc. | TravelMeredith | Outdoor Living Ideas | Do It Yourself | Remodel | Kitchen and Bath Idea
Decorating Ideas | Remodeling Tips | Home Improvement | Landscaping Ideas | Free Recipes | Better.tv | F

Brand Licensing Partners: Home Interiors | QF Industries | Chief Architect
© Copyright 2008, Meredith Corporation. All Rights Reserved | Privacy Policy | By using this site, you agr



www.homeinteriors.com/bhgcollection
(Landing page from "Home Interiors" link on BHG.COM home page)
March 31, 2008



**EXHIBIT 6**





# Start fresh this spring!

Every year, spring brings with it the freshest looks, colors, and home decorating trends. To welcome springtime into your home, Home Interiors has an array of inspiring new products and ideas to help you start fresh this spring!

This is the ideal time to host your own Home Interiors Party and earn special rewards that will help you decorate your home at tremendous savings. Reward yourself even more with our exclusive line of Hostess-Only items that you can earn for FREE, now offering 13 exceptional new selections!

Artwork is the natural place to start for creating a fresh look in your home. **FrameIt**, our exclusive custom-framed art line, now offers you even more ways to create the perfect piece of custom-framed art. Spring brings 10 new prints, 4 new frames, and 3 new mat choices for bringing unique customized art to life. Plus, we have dramatically expanded our print line, offering 26 new and innovative art choices to inspire you!

You'll be amazed at the difference our quality fashionable accessories will make in your home this spring whether you are calling on your Decorating Consultant for makeovers big or small. Home Interiors offers trend-right design, total looks for every room, and decorating solutions for every budget. We bring you real-life decorating options for creating the home of your dreams. **And we've got it all inside this catalog!**

This spring, look to Home Interiors as your ideal source for decorating and entertaining inspiration and information. With our extensive selection of Home Interiors products, along with our Better Homes and Gardens' and Home Interiors Kids' Collections, your Home Interiors Decorating Consultant can help you arrive at just the right look for your preferred decorating style!

And when you're ready to turn your love for decorating and sharing beautiful things into a FUN and fulfilling career, the opportunity of a lifetime is waiting for you here at Home Interiors!

*Decorate your life with Home Interiors today!*

*Dick Heath*

President and Chief Executive Officer

EXCLUSIVE REWARDS . . . . . . . . . . . . . . . . . 4
Earn exceptional, exclusive rewards as a Hostess when you have you own Home Interiors Party.

*frame it* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CASUAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Comfort and ease are the essence of a Casual-style home.
  · ROMANTIC . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  · RUSTIC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
  · KITCHEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
  · COUNTRY . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CLASSIC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Treasured and timeless capture the heart of Classic decor.
  · FLORAL ELEGANCE . . . . . . . . . . . . . . . . . . . . 64
  · LUSH GARDENS . . . . . . . . . . . . . . . . . . . . . . . 86
  · THOMAS KINKADE . . . . . . . . . . . . . . . . . . . . 94

CONTEMPORARY . . . . . . . . . . . . . . . . . . . . 98
Simple and sleek speak volumes for Contemporary living.
  · BOLD EXPRESSIONS . . . . . . . . . . . . . . . . . . . 100
  · MODERN ROMANCE . . . . . . . . . . . . . . . . . . 108
  · GLOBAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

CANDLE ACCESSORIES . . . . . . . . . . . . . . . . . . . . . 60
ENSEMBLES SPECIAL SAVINGS! . . . . . . . . . . . . . . . . . . 90
CANDLES & HOME FRAGRANCES . . . . . . . . . . . . . . 124
FLORALS & GREENERY . . . . . . . . . . . . . . . . . . . . . . . 182
FIGURINES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 186

**Better Homes** and Gardens
COLLECTION . . . . . . . . . . . . . . . . . . . . . . . . . . 132
Set the scene for amazing entertaining experiences and get hands-on with fabulous outdoor and crafting tips.
  · CANDLES & HOME FRAGRANCES . . . . . . . . . . 164

Home Interiors kids' . . . . . . . . . . . . . . . . . . . . 166
Be inspired for Decorating Little Lives'.

2



# From the Editors of Better Homes and Gardens

Beautiful things happen when spring finally arrives. As winter's chill makes way for sunshine and warm breezes, our readers sort through their magazine clippings for inspiration, from garden getaways to new recipes and ideas for outdoor entertaining.

With this collection, we've handpicked containers for gardening and dining as well as a variety of serving pieces that will make setting the table fun and easy. As you look through these pages, you'll find clever ideas for using the pieces you already have, new accessories guaranteed to make your next party a hit, and centerpieces that bring the vivid colors of the season right up to your patio or porch.

Soon you'll be living outside and loving it!



**IVORY FOR EVERY OCCASION**
Go casual or formal with ivory dinnerware simply by changing the accents.
**PAGE 148**



**FRENCH COUNTRY CASUAL**
Dine alfresco with European-inspired rooster place settings.
**PAGE 152**

**A.** Artisan Stemware. In the hands of skilled glassblowers, molten glass becomes an artful vessel brought to life by hundreds of tiny bubbles suspende time. Thick, ringed stems contrast with delicately flared bubble-glass bowls, ea a unique creation enhanced by the slight variations characteristic of handcrafte glass. Hand wash. 12 oz.
•75086  Set of 4  **$34.99**

**B.** Sonoma Villa® Tableware. Inspired by the rich earth and warm spirit o the Sonoma Valley, this exclusive tableware collection celebrates nature's fines offerings with color, grace and gusto. Each earthenware piece is painted entire by hand and is dishwasher, microwave and oven safe. Dinner plate: 10¾" diam salad plate: 8" diam., bowl: 6¼"x6¼"x2¾" h., 16 oz.; mug: 10 oz. (Mug shown on page 134.)
•21023  4-piece set  **$39.99**



Provence Laz
Susan, $44.9
See page 150



Before

A pretty table makes every meal memorable. By simply varying your dinnerware and centerpiece, you turn every family get-together into a special occasion.

Sonoma Villa® Salt and Pepper Shakers, 2-piece set, $9.99. See page 134.

A, B

**A. Sonoma Villa® Tableware.** Inspired by the rich earth and warm spirit of the Sonoma Valley, this exclusive tableware collection celebrates nature's finest offerings with color, grace and gusto. Each earthenware piece is painted entirely by hand and is dishwasher, microwave and oven safe. Dinner plate: 10¾" diam.; salad plate: 8" diam.; bowl: 6¾"x6¾"x2¾" h., 16 oz.; mug: 10 oz.
•21023   4-piece set   **$39.99** ⊕

**B. Artisan Stemware.** In the hands of skilled glassblowers, molten glass becomes an artful vessel brought to life by hundreds of tiny bubbles suspended in time. Thick, ringed stems contrast with delicately flared bubble-glass bowls, each a unique creation enhanced by the slight variations characteristic of handcrafted glass. Hand wash. 12 oz.
•75086   Set of 4   **$34.99**

**C. Sonoma Villa® Salt and Pepper Shakers.** A is for apple—and C is for clever. This smart shaker set brings both to the table with a two-piece design that combines to form a delicious-looking apple. Hand-painted ceramic. Each 3¾"x1½"x3⅜" h., 3¾"x3¾"x3⅛" together.
•75091   2-piece set   **$9.99** NEW

**D. Sonoma Villa® Pitcher.** Part pitcher, part sculpture. Undeniably the most detailed piece in the Sonoma Villa Collection, our pitcher is a colorful melding of dimensional fruit shapes, completed by a grapevine-look handle. This hand-painted earthenware piece will be a special addition to your table. 9½"x7¼"x8¾" h., 94 oz.
•21028   **$29.99** ⊕

**E. Sonoma Villa® Serving Bowls.** Artful, dimensional fruit shapes encircle these generously sized ceramic serving bowls. The hand-painted pair is a beautiful addition to our Sonoma Villa Collection—and your family's table. Dishwasher and microwave safe. 9½"x9½"x4¾" h., 76 oz; 8"x8"x4" h., 42 oz.
•75075   2-piece set   **$49.99**

**F. Sonoma Table Runner.** Bring texture and warmth to your table with this tapestry-style table runner. Durable polyester, cotton and acrylic blend. 13¾"x72".
•11310   **$29.99** ⊕



D



E, F

⊕ PART OF THE HOME INTERIORS PRODUCT LINE.





**A.** Sonoma Villa® Utensil Holder. With four wooden cooking tools included—and room for several more—this container can store all your most-used utensils. Crafted of ceramic and painted entirely by hand, it's pretty enough to double as a vase. Jar: 7"x7"x7¼" h.; utensils: 12".
•75089  5-piece set  **$24.99** NEW

**B.** Sonoma Villa® Canisters. Keep dry ingredients fresh and close at hand with these airtight ceramic canisters. Dimensional fruit shapes which are painted by hand, decorate each canister with natural beauty. Dishwasher safe. 6¾"x6¾"x9½" h.; 6"x6"x8¼" h.; 4½"x4½"x7" h.
•75077  3-piece set  **$59.99**

**C.** Sonoma Villa® Spreaders. When these cheerful spreaders are on the table, there's sure to be something delicious in store. Hand-painted ceramic handles grip wide stainless steel blades that are perfectly shaped to serve butter, jam, soft cheese and all sorts of spreads. Hand wash. 5¼" long.
•75094  Set of 4  **$14.99** NEW

**D.** Sonoma Villa® Sugar Bowl & Creamer Set. A handy tray completes this sugar and cream serving trio, which is an essential addition to your Sonoma Villa tableware set. Hand-painted earthenware. Dishwasher safe. Sugar bowl: 3½"x3½"x4" h.; creamer 3½"x5"x3⅞" h.; tray: 10"x5¼".
•21017  3-piece set  **$19.99** 🏷

**E.** Sonoma Villa® Teapot. A relaxing cup of tea is even more enjoyable when poured from this hand-painted ceramic pot that's rich with color and dimension. Hand wash. 9¾"x6¾"x7" h.; 32 oz.
•75090  **$22.99** NEW





Relax,
brew a pot of tea,
and savor the
splendor of spring.



**A. Sonoma Villa™ Tableware.** Inspired by the rich earth and warm spirit of the Sonoma Valley, this exclusive tableware collection celebrates nature's finest offerings with color, grace and gusto. Each earthenware piece is painted entirely by hand and is dishwasher, microwave and oven safe. Dinner plate: 10¾" diam.; salad plate: 8" diam.; bowl: 6¼"x6¾"x2¾" h., 16 oz.; mug: 10 oz.
•21023   4-piece set   **$39.99**

**B. Ceramic Fruit Containers.** Our hand-finished ceramic fruits blend antique appeal with a host of creative uses. Stow spices, condiments or sugar and sweetener packets. Or delight guests by serving dessert with unexpected style. Hand wash. 3⅛" to 4¾" h. (Two sets shown.)
•76439   3-piece set   **$19.99**

**C.** Apple-a-Day Cookie Jar. Hand-painted charm enfolds this cheerful addition to your countertop. Invite family and friends to enjoy cookies and other treats that are kept fresh beneath the airtight lid. 7¾"x7¾"x7¼" h.
·75083  **$29.99**

**D.** Sonoma Villa® Pitcher. Part pitcher, part sculpture. Undeniably the most detailed piece in the Sonoma Villa Collection, our pitcher is a colorful melding of dimensional fruit shapes, completed by a grapevine-look handle. This hand-painted earthenware piece will be a special addition to your table. 9¾"x7¼"x8¾" h., 94 oz.
·21028  **$29.99** 🌐

**E.** Barona Canister Set. Old-world Italian pottery inspired this stoneware canister set that's neatly cradled by a rustic iron tray. Matching iron knobs act as graceful finials atop airtight lids. Store essentials such as flour, sugar and coffee—or even tea and grains. 14⅝"x5⅛"x8⅛" h.
·75065  **$69.99**



**F.** Traditions Cookbook Stand. Our graceful iron cookbook stand will be a helpful kitchen companion for years to come. Its deep shelf accommodates cookbooks of varying thicknesses while the adjustable pedestal offers two viewing angles. Weighted page markers keep your book or magazine open and in place. Antiqued brown finish. 11⅛"x8"x13" h.
·75085  **$24.99**



**G.** Zest Mixing Bowls. A trio of hand-painted bowls to inspire your own artful kitchen creations. Enjoy two complimentary recipes—Peanut Butter Balls and Chocolate Marshmallow Cookies—both approved by the Better Homes and Gardens® Test Kitchen. Dishwasher- and microwave-safe ceramic. 7½"x7½"x3¾" h., 38 oz., 8¾"x8¾"x4⅛" h., 60 oz.; 10"x10"x5" h., 96 oz
·75076  3-piece set  **$49.99**

**H.** Better Homes and Gardens® New Cook Book, 14th Edition. Featuring 1400+ recipes and 800+ full-color photographs, this 656-page hardcover cookbook shares tried-and-true classics and fresh, new flavors—plus an all-new 20-Minute Meals chapter—with each and every recipe tested and perfected by the Better Homes and Gardens® Test Kitchen.
·76404  **$29.95**





🌐 PART OF THE HOME INTERIORS PRODUCT LINE



**A. Garden Shepherd's Hooks.** These outdoor helpers make it easy to hang plants, lanterns, birdfeeders, windchimes and more anywhere in your yard. Sturdy, rust-resistant iron in a versatile brown-over-black finish. 8"x53¾" h.; 8"x47¼" h. (Four small hooks shown; see complete set on page 143.) •75624  2-piece set  **$24.99**

**B. Soleil Mosaic Lantern.** Colorful by day and simply dazzling after dark, our handmade mosaic lantern adds a festive touch anytime. Crafted of metal and mosaic glass. Use with tea light candle 5½"x5½"x15" h. •75628  **$26.99** each

**C. Becker Folding Chair.** Carve out a spot in your own backyard for a relaxing escape furnished with a couple of our cozy outdoor chairs. Their casual design employs black powder-coated metal and sealed, dark-stained wood for good looks that last. 16¼"x16½"x32¼" h. •75634  **$39.99** each

**D. Becker Folding Table.** Our low table is essential for outdoor lounging, providing the perfect spot to rest a cold glass of tea or a hot cup of coffee. Made of black powder-coated metal and sealed, dark-stained wood for good looks that last. 18"x18"x18" h. •75635  **$39.99**

**140** BETTER HOM

B

C, D





**A.** Artesia Hummingbird Feeder. Crafted of brilliantly colored handblown glass, our artisan-style hummingbird feeder is a sight to behold even in between visits from these enchanting creatures. A great gift for nature lovers, or for yourself, this handmade piece is priced exceptionally well. Hand wash. 6¼"x6¼"x11" h. with included metal hook.
·75616  **$19.99**

**B.** Copper Party Lights. Keep the party going after the sun sets with festive lighting you can hang practically anywhere. Up to three strands can connect end to end—try them along a fence line, bordering a table umbrella or even indoors. Ten white lights twinkle inside faux copper balls strung by brown wire. 132" long.
·76447  **$19.99**

**C.** Hadley Garden Stakes. Generous glass vessels held aloft by powder-coated metal stakes invite creative use year round. Fill with flickering candles, fresh flowers and even birdseed to enhance outdoor living. Use with candles up to 2" in diam. Rich brown finish. 3¼"x3¼"x28¼" h.
·75618  Set of 4  **$39.99**

**D.** Garden Shepherd's Hooks. These outdoor helpers make it easy to hang plants, lanterns, birdfeeders, windchimes and more anywhere in your yard. Sturdy, rust-resistant iron in a versatile brown-over-black finish. 8"x53½" h.; 8"x47¾" h.
·75624  2-piece set  **$24.99**



**E. Soleil Mosaic Birdbath.** Crafted of hand-placed glass tiles and set atop a scrolled iron stand, this birdbath is an artful addition to your yard that welcomes feathered friends. 16½"x16½"x24¾" h.
•75625 **$79.99**

**F. Soleil Mosaic Lantern.** Colorful by day and simply dazzling after dark, our handmade mosaic lantern adds a festive touch anytime. Crafted of metal and mosaic glass. Use with tea light candle. 5½"x5½"x15" h.
•75628 **$26.99** each







**Granada Chandelier/Centerpiece.** This graceful metal stand offers two ways to use—and countless ways to decorate. Swap the hanging hook for the finial topper and pedestal base and, voilà, your chandelier becomes a centerpiece. Dress with candles and flowers, add seasonally inspired elements, or line with napkins to turn the centerpiece into a server. Brown metal with glass votive holders. Not food safe; line before use with food. 16½"x16½"x21¾" h.
•75088 **EXCLUSIVE TO HOSTESSES** NEW

## ONE CHANDELIER—4 GREAT IDEAS

Designed for hanging or standing, and shipped with hardware for both, this candle chandelier makes a pretty and practical accent, indoors or out.

**1.** Create a bird buffet by filling the chandelier candle cups with birdseed. Add a small potted plant in the center tray and attach the hook for hanging. For a complete feeding station, use a pedestal bowl in the center and fill it with water.

**2.** Pamper your guests with a mini spa. Fill the center tray of your candle chandelier with soaps, fragrant diffusers, and body lotions and place potpourri or candles in the glass cups. Using the decorative base and finial, display your spa on the bath edge or countertop.

**3.** On your porch or in a sunroom, the candle chandelier provides just enough light for springtime dining. With a vase of fresh flowers in the tray, it does double-duty as a centerpiece.

**4.** Celebrate spring with a creative Easter arrangement of bunny cookies and egg-shape mints. Place the candies in the glass candle cups of your chandelier and nest the frosted cutouts in the center tray. Finish with a pretty bow at the top.



Styled for porch, patio, or any room, this candle chandelier makes entertaining a summer breeze.



Across the country, friends gather on porches to welcome the season.

**A. Ivory Dinnerware.** Old-world elegance in classic ivory. This richly embossed pattern takes new shape on each of the five pieces. Hand-painted ceramic. Dishwasher and microwave safe. Dinner plate: 10½" diam.; salad plate: 9" diam.; bowl: 7½"x7½"x2" h., 16 oz.; bread plate 6½" diam.; mug: 10 oz. (Complete set shown on page 148.)
•75041  5-piece set  **$49.99**

**B. Blossom Place Card Holders.** Make every guest feel special with a fresh bouquet of flowers, herbs or greenery gathered just for them. Set includes four glass bud vases and twelve place cards. 3"x3⅜"x4" h.
•76462  Set of 4  **$24.99**

**C. Rosetta Stemware.** Effervescent bubbles float within the clear walls of our artisan-style glassware. The light splash of color adds a blushing hue to your table as delicate shapes enchant the eye. Hand wash. 8 oz.
•75046  Set of 4  **$39.99**



Catalina Chandelier,
$59.99
See page 149.

Before

By sunlight or candlelight, setting a beautiful table on the
porch is what warm-weather entertaining is all about.
Bring out your favorite dinnerware, pick some
fresh-picked flowers, and enjoy it all in the open air.

Rosette Stemware,
Set of 4 $39.99
See page 146

146

**A. Ivory Dinnerware.** Old-world elegance in classic ivory. This richly embossed pattern takes new shape on each of the five pieces. Hand-painted ceramic. Dishwasher and microwave safe. Dinner plate: 10½" diam.; salad plate: 9" diam.; bowl: 7½"x7½"x2" h., 16 oz.; bread plate: 6½" diam.; mug: 10 oz.
•75041  5-piece set  **$49.99**

**B. Blossom Place Card Holders.** Make every guest feel special with a fresh bouquet of flowers, herbs or greenery gathered just for them. Set includes four glass bud vases and twelve place cards. 3"x3⅜"x4" h.
•76462  Set of 4  **$24.99**

**C. Ivory Serving Platter.** Present your main course or serve artfully arranged appetizers from our versatile oval platter. Its simple ivory hue is the perfect backdrop for your colorful cuisine. Dishwasher- and microwave-safe ceramic. 16¼"x12".
•75042  **$29.99**

**D. Ivory Serving Bowl.** Serve everything from whipped, buttery potatoes to colorful salads from this deep, graceful bowl. Hand-glazed ceramic with delicately distressed leaf embossing. Dishwasher and microwave safe. 10¼"x10¼"x5½" h.; 3.5 quart.
•75043  **$32.99**

**E. Catalina Chandelier.** Bring indoor comforts outside with thoughtful details like this casually charming chandelier that can also be used as a centerpiece. Plant flowers or greenery in the center and surround with sparkling candlelight. Metal, ceramic and glass. Use with votive or mini-pillar candles. 20"x20"x22¼" h. with the included hanger.
•75636  **$59.99**

**F. The Great Divide Bowl.** Our all-occasion server neatly separates different snacks or side dishes, preserving precious table space whenever family and friends gather. Or fill it with fruit, potpourri or floating flower heads—it's that versatile! Glass. Hand wash. 9"x9"x2¾" h.
•75059  **$16.99**







149





**A, B.** Cranberry & Fern Casserole S
Now casseroles can look as good as they
taste when you present them in our emboss
stoneware bakers and accompanying iron
caddies. The antiqued carriers protect your
table while dressing up the hand-painted dish
Casseroles are dishwasher, microwave and
oven safe. Oval casserole: 13"x9"x2¾" h.; 1½
quart. Square casserole: 8"x8"x2⅛" h.; 1 qu
•75048   Cranberry, 2-piece set   **$42.99**
•75049   Fern, 2-piece set   **$39.99**

**C.** Rosetta Stemware. Effervescent
bubbles float within the rosy walls of our
artisan-style glassware. The light splash of c
adds a blushing hue to your table as delicate
shapes enchant the eye. Hand wash. 8 oz.
•75046   Set of 4   **$39.99**

**D.** Provence Lazy Susan. Used in servin
since the 1700s, revolving trays like this one
help everyone at the table enjoy the fare.
Crafted of wood with carved craftsman's
markings, ours is distinguished by its genero
size and smooth glide. A food-safe coating
protects the rich finish, allowing you to serve
directly on the surface. Hand wash. 15" diam
•75082   **$44.99**

**E.** Artesia Hummingbird Feeder.
Crafted of brilliantly colored handblown glas
our artisan-style hummingbird feeder is a
sight to behold even in between visits from
these enchanting creatures. A great gift for
nature lovers, or for yourself, this handmade
piece is priced exceptionally well. Hand was
6¾"x6¾"x11" h. with the included metal hool
•75616   **$19.99**

**F.** Lawrence Tiered Serving Stand.
Add your own plates to our tiered metal star
to create a tempting display of appetizers,
desserts and more. Or store stacks of plates
near a buffet-style spread. Antiqued brown
finish. Accommodates dinner-size plates.
14½"x12"x23¾" h.
•75079   **$29.99**

**G.** Linley Serving Tray. From dining roo
to deck, our classic glass and metal tray serv
up drinks and snacks with style and ease.
Antiqued brown finish. 16½"x14"x3⅛" h.
•75078   **$39.99**

Blossom Place
Card Holders,
Set of 4, $24.99
See page 146.

Ivory Dinnerware,
5-piece set, $49.99
See page 148.

151



Invite friends over for a
casual spring dinner party.

152



**A. Artisan Stemware.** In the hands of skilled glassblowers, molten glass becomes an artful vessel brought to life by hundreds of tiny bubbles suspended in time. Thick, ringed stems contrast with delicately flared bubble-glass bowls, each a unique creation enhanced by the slight variations characteristic of handcrafted glass. Hand wash. 12 oz.
•75086 Set of 4 **$34.99**

**B. Sculpted Glass Vessel—Large.** Our shapely glass urn holds endless possibilities for storage and display, dramatizing treasures and essentials alike. 6¼"x6¼"x14" h.
•76464 **$29.99** each

Before

Finesse your favorite greens for a light and airy centerpiece. With rattan chargers and bubble glassware, you'll feel like you're seaside.

Grove Set of 4, **$32.99**
See page 154.

153



**A. Rooster Collection Tableware.** When you consider how much time and effort you put into meals for family and friends, it only makes sense that the tableware they're served on is crafted with the same care and attention. This exclusive tableware collection takes this notion to heart, with every detail of each piece painted entirely by hand. Dishwasher- and microwave-safe ceramic. Dinner plate: 10¾" diam.; salad plate: 7¾" diam.; bowl: 6¼"x2½" h., 20 oz.; mug: 12 oz.
•21041  4-piece set  **$39.99**

**B. Grove Hill Chargers.** Natural appeal enfolds our handwoven willow chargers, which add a rich layer of texture while protecting your tabletop. Dress them up or down for any occasion—and try tying place cards to the handles for a personal touch. 14½"x12".
•76460  Set of 4.  **$32.99**

A, B

**C. Rooster Collection Canisters.** Keep dry ingredients fresh and close at hand with these airtight ceramic canisters. Every detail on each canister is painted entirely by hand, imparting an artisan-style feel to each unique piece. Dishwasher safe. 7"x7"x9½" h.; 6"x6"x8½" h.; 5½"x5¼"x7¼" h.
•21042  3-piece set  **$59.99** 🏠

**D. Grayson Tiered Pedestal.** Our antiqued wooden stand inspires creative display of everyday objects. Make a pretty presentation of jewelry or perfumes; create an easy and impressive floral or fruit arrangement; serve appetizers with upscale flair (not food safe; line before use). Rubbed black finish with hints of brick red beneath. 11"x11"x15½" h.
•76448  **$39.99**

**E. Sculpted Glass Vessel—Small.** Our shapely glass urn holds endless possibilities for storage and display, dramatizing treasures and essentials alike. 6"x6"x9" h.
•76466  **$24.99**

**F. Bella Trivets.** Helpful on a table and beautiful on a wall, our versatile metal trivets feature padded "feet" and built-in keyhole hangers to accommodate either use. Dark brown finish with bronze highlights. 7⅞" diam. (2); 11"x7⅝".
•75092  3-piece set  **$27.99** NEW









**Ava Tiered Server.** Effortlessly turn
into an art form with this versatile tiere
server. The elevated metal trays and gl
bowl can be stacked or separated to b
display your choice of fare. Or create
stunning centerpiece with candles and
flowers—or whatever you can imagine
Antiqued brown finish. Not food safe;
trays before use with food. Large tray
16"x16"x3⅞" h, small tray, 6⅝"x6⅝"x
bowl: 20 oz.
•75093  **$54.99** NEW

## SERVE UP STYLE—3 WAYS

Whatever the occasion, from snacks or
patio to formal gatherings, you can c
on this flexible server to come to the t
appropriately dressed. You get both the
bowl and metal tray insert for the top
making it easy to instantly change the lo

**1.** Candlelight sets the mood for ope
dining. Layer candles of different hei
on the top and base trays. Surround t
with live moss and smooth stones f
natural accent. (Position candles so
flames are away from the moss.)

**2.** Fill sculpted glass vessels with l
gatherings of fresh flowers. Avoid h
bouquets to allow the contrast of the g
and metal to artfully play off one and
Use the server's glass center bowl as a
flower container, displaying it tabletop.

**3.** For your next dinner party, start
appetizers displayed on two tiers i
eye-catching arrangement. Cover
metal surface with decorative food pa
or a cloth napkin, and then start adding
foods beginning with the largest ch
wedge. Layer meats, bread, and
introducing colors and flavors that pl
the senses.



Sculpted Glass
Vessel—Medium,
$26.99
See page 164.

Sculpted Glass
Vessel—Small,
$24.99
See page 165.



3.

Twice as nice, this
two-tiered server offers
creative solutions for easy
nighttime entertaining.

157



158



**A.** Scooter the Rooster. The iconic rooster is coming out of the barn and into homes everywhere! This one cozies up your kitchen, family room or patio and even offers unexpected storage—just lift his tail. Handwoven rattan with metal accents. When used outdoors, protect during harsh weather. 7½"x20"x17" h.
•76469  **$39.99** each

**B.** Audrey Bowls. The lively ruffles that encircle our pedestal-style bowls dress up ice cream, fruit, soup and more. Ceramic; hand wash. 5½"x5⅝"x4⅛" h.; 10 oz. (More than one set shown.)
•75071  Set of 4  **$39.99**

**C.** Audrey Serving Pedestals. Our stackable serving pedestals turn appetizers and desserts into tempting displays. Ceramic; hand wash. 10⅛"x10⅝"x5" h.; 9⅛"x9⅛"x4¼" h.; 7⅞"x7⅞"x4" h.
•75070  3-piece set  **$64.99**

**D.** Audrey Hot & Cold Dip Bowls. Crowd-pleasing dips are kept just the right temperature when served in these clever containers. The fourteen-ounce hot dip bowl is designed for use with a tea light candle while the twelve-ounce cold dip bowl accommodates ice. Microwave-safe ceramic; hand wash. 6¾"x5¾"x6⅛" h.; 6"x6"x4¼" h.
•75084  4-piece set  **$31.99**

**E.** Artisan Stemware. In the hands of skilled glassblowers, molten glass becomes an artful vessel brought to life by hundreds of tiny bubbles suspended in time. Thick, ringed stems contrast with delicately flared bubble-glass bowls, each a unique creation enhanced by the slight variations characteristic of handcrafted glass. Hand wash. 12 oz. (More than one set shown.)
•75086  Set of 4  **$34.99**

159



Create an indoor garden sanctuary for year-round enjoyment.

**A. Vintage Find Birdhouse.** Inspired by handmade birdhouses found at local markets, this charming habitat blends all our favorite elements—weathered wood, hammered tin and vintage-**style** hardware—in one eclectic design. 8"x7"x14" h.
•75629  **$39.99**

**B. Daphne Garden Table.** Stenciled floral cutouts and shapely legs turn an ordinary metal table into an artful accent for your sunroom, breakfast nook, bedside or covered patio. Crafted of black metal with subtle rust-red antiquing. Simple assembly. 21½"x21½"x28" h.
•14109  **$89.99** 

**C. Delaney Hanging Basket Stand.** Give hanging plants a grand home with our graceful three-basket stand crafted of classic black iron. Or, for a little outdoor ambience, set the baskets aside and hang lanterns instead. 27"x27"x72¼" h.
•75630  **$99.99**

**D. The Giving Planter.** Our planter is crafted of glazed terra-cotta with miniature resin shovel accents. The inscription reads, "You can never out-give God. He has the bigger shovel!" 6⅝"x6⅝"x6¼" h.
•12886  **$19.99**

**E. Wooden Rice Basket.** Once used to measure and carry rice and other grains, handmade baskets like this one now offer convenient tote-style storage with old-world appeal. Reinforced with strips of antiqued metal, it's a sturdy home for magazines, toiletries, plants and more. 12½"x12½"x8¾" h.
•76437  **$39.99**

PART OF THE HOME INTERIORS PRODUCT LINE.



Pamper yourself with
Gardener's Hand Therapy
in fresh spring scents





**A.** Eclectic Cross Windchime. Chimes, crystals, crosses and even a dainty bell mix and mingle to create an inviting visual and auditory experience. Notice how each cross exhibits a unique design. Brass, acrylic and resin. 5"x5"x44" h.
•75604  **$42.99**

**B.** Melrose Hurricane. Create dramatic displays bathed by candlelight within this clever hurricane. A center column of glass separates your candle from decorative elements such as flowers, berries, leaves or seashells—your options are endless! 7¾"x7½"x9½" h.
•76037  **$39.99** each

**C.** Parker Garden Cart. A charming addition indoors or out, our rolling garden cart lends itself to a host of clever uses. Serve beverages, display plants, store toiletries or create a unique accent table. Black metal. 12¾"x26¾"x32¼" h.
•75632  **$59.99**

**D.** Sculpted Glass Vessels. Our shapely glass urns hold endless possibilities for storage and display, dramatizing treasures and essentials alike. Medium: 5"x5"x12" h. Large: 6¾"x6¾"x14" h.
•76465  Medium  **$26.99**
•76464  Large  **$29.99**

**E.** Porter Beverage Caddy. Here's a refreshingly refined take on outdoor entertaining. Finished in a handsome copper tone, a generous metal basin keeps drinks iced and at the ready. Below, a matching tray holds glasses and garnishes and lifts out to serve drinks or hors d'oeuvres. Simple assembly. 15¾"x15¾"x31½" h.
•75620  **$79.99**

**F.** The Giving Planter. Our planter is crafted of glazed terra-cotta with miniature resin shovel accents. The inscription reads, "You can never out-give God. He has the bigger shovel!" 6⅞"x6⅞"x6⅞" h.
•12886  **$19.99** 🌼

🌼 PART OF THE HOME INTERIORS PRODUCT LINE.









**A.** Lavender & White Tea Fragrance Collection. Calming lavender and delicate white tea leaves mingle with notes of sage and minty eucalyptus. Soy candle: 3⅛"x3⅛"x4½" h.; 8.62 oz.; approx. burn time: 60 hours. Reed diffuser: 1⅞"x1⅞"x5¾" with 9" reeds; 4 oz. Potpourri: 10.75 oz.

| ·75433 | Soy Candle | **$18.99** |
| ·75768 | Reed Diffuser | **$24.99** |
| ·75763 | Potpourri | **$19.99** |

**B.** Tarragon & Mango Fragrance Collection. A luscious treat for the senses, combining juicy mango and guava with herbal notes of tarragon and basil. Soy candle: 3⅛"x3⅛"x4½" h.; 8.62 oz.; approx. burn time: 60 hours. Reed diffuser: 1⅞"x1⅞"x5¾" with 9" reeds; 4 oz. Potpourri: 10.75 oz.

| ·75435 | Soy Candle | **$18.99** |
| ·75766 | Reed Diffuser | **$24.99** |
| ·75765 | Potpourri | **$19.99** |

**C.** Lemongrass & Coconut Fragrance Collection. An exotic blend of invigorating lemongrass and rich coconut spiced with clove and bergamot. Soy candle: 3⅛"x3⅛"x4½" h.; 8.62 oz.; approx. burn time: 60 hours. Reed diffuser: 1⅞"x1⅞"x5¾" with 9" reeds; 4 oz. Potpourri: 10.75 oz.

| ·75434 | Soy Candle | **$18.99** |
| ·75767 | Reed Diffuser | **$24.99** |
| ·75764 | Potpourri | **$19.99** |

**Clover & Sweet Pea Fragrance Collection.** Delicate aromas of green clover and sweet pea blossoms are awakened by rich layers of cassis and lime zest. Soy candle: 3½"x3⅝"x4½" h.; 8.62 oz.; approx. burn time: 60 hours. Reed diffuser: 1⅝"x1⅛"x5¾" with 9" reeds; 4 oz. Potpourri: 10.75 oz.

| | | |
|---|---|---|
| •75432 | Soy Candle | **$18.99** |
| •75769 | Reed Diffuser | **$24.99** |
| •75762 | Potpourri | **$19.99** |

**Cilantro Fragrance Collection.** Scent your home with this fresh, crisp combination of cilantro, lemon and basil. Soy candle: 3½"x3⅝"x4½" h.; 8.62 oz.; approx. burn time: 60 hours. Reed diffuser: 1⅝"x1⅛"x5¾" with 9" reeds; 4 oz. Potpourri: 10.75 oz.

| | | |
|---|---|---|
| •75437 | Soy Candle | **$18.99** |
| •75752 | Reed Diffuser | **$24.99** |
| •75755 | Potpourri | **$19.99** |



Audrey Serving
Pedestals,
3-piece set, **$64.99**
See page 159.



**Celebrations Cupcake Tree.** With four interchangeable finials and three modular tiers, our cupcake tree is ready for any occasion. Toppers include a gift box, a star, a jack-o'-lantern and a fleur-de-lis that displays a photo or note card. Holds up to twenty cupcakes or trinkets—or remove any of the tiers for a smaller stand. Antiqued brown metal. 10"x10"x16½" h. to 17" h. depending on finial.
▸75087  **$29.99**

ZINNIA

Change the top of your Cupcake Tree to fit any occasion