## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MEREDITH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00257 RBW |
| | ) | |
| HOME INTERIORS & GIFTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF MEREDITH CORPORATION'S MOTION <u>FOR A PRELIMINARY INJUNCTION</u>

Of Counsel
James G. Sawtelle

Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414
Telephone: (303) 447-778
Facsimile: (303) 447-7800
jsawtelle@faegre.com

Michael D. Hays (D.C. Bar No. 932418)
Mitchell H. Stabbe (D.C. Bar No. 333427)

Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, D.C. 20036-6802
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
mhays@dowlohnes.com
mstabbe@dowlohnes.com

Counsel for Plaintiff Meredith Corporation

April 11, 2008

## CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    A.    Meredith Has Satisfied The Likelihood Of Success Criterion Because
           Under the Limited License Agreement And Black Letter Contract Law,
           HIG's Non-Payment Of Royalties Is Sufficient To Justify Enjoining
           HIG's Use of the Meredith Marks. ....................................................................... 2

    B.    HIG Has Already Agreed That Meredith Will Suffer Irreparable Injury By
           Virtue Of Its Failure To Pay The Royalties.. ...................................................... 10

    C.    An Injunction Prohibiting HIG From Using The Meredith
           Marks Would Not Substantially Injure HIG Because It
           Can Continue To Operate Its Business. ............................................................... 13

    D.    The Public Interest Favors An Injunction ........................................................... 14

CONCLUSION ................................................................................................................. 15

## INTRODUCTION

Plaintiff Meredith Corporation ("Meredith"), by and through its undersigned counsel, submits the following Reply to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction against Defendant Home Interiors & Gifts, Inc. ("HIG").

In its opposition, Defendant HIG does not deny that the Meredith Marks are distinctive and entitled to protection, that it has failed to pay Meredith at least $1,000,000 in royalty payments, that the failure to pay is a material breach, and that it continues to use Meredith's Marks. Unable to refute these facts, which, as demonstrated below, are alone sufficient to obtain an injunction, it instead asserts the "I want to have my cake and eat it too" defense: it doesn't want to pay the royalties, but insists on continuing to use Meredith's BETTER HOME AND GARDENS® trademark, one of Meredith's most valuable assets that it has developed and nurtured for over eighty-five years.

In support of this defense, HIG bases its opposition almost solely upon a single proposition: the Agreement does not make payment a condition of HIG's continued right to use the Meredith Marks and, accordingly, absent termination, injunctive relief is not permissible. As demonstrated below, this proposition is expressly contrary to the Limited License Agreement that HIG, a large, sophisticated company, which by its own admission is the "largest direct seller of home accessories in North America" (Gustafson Decl. ¶ 4) (and an experienced licensee of third-party marks), freely accepted to induce Meredith into entering the Agreement. In addition, standard hornbook contract law (as well as common sense) establishes that "[u]nder no circumstances" is HIG permitted "to stop performance but continue to take advantage of the contract's benefits." S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 374 (3rd Cir. 1992).

Virtually all of Defendant HIG's arguments that Meredith has not satisfied the four criteria for an injunction are premised on the argument that it remains authorized to use the

Meredith Marks.    Thus, if the Court determines that HIG's use is unauthorized, then an injunction should issue.

## ARGUMENT

### A.    Meredith Has Satisfied The Likelihood Of Success Criterion Because HIG's Non-Payment Of Royalties Is Sufficient To Justify Enjoining HIG's Use Of The Meredith Marks.

Defendant HIG's primary argument is that injunctive relief is **only** available after termination of the Limited License Agreement, and since Meredith has not terminated that Agreement, it is not entitled to an injunction. Thus, in Defendant HIG's view, it could refuse to pay any royalties whatsoever for the full thirteen years of the Agreement, but, absent an express termination, HIG may continue to enjoy the benefits of the Agreement. That position is contrary to the express language of the Limited License Agreement, contrary to standard contract law, and contrary to common sense.

### 1.  The Limited License Agreement.

In support of its proposition that Meredith must terminate the Limited License Agreement before it is entitled to an injunction, HIG ignores the plain language of the Agreement and, in reality, relies upon a single case from the Western District of Texas. Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC, No. SA-05-CV-750-XR, 2008 U.S. Dist LEXIS 10603, at *240-41 (W.D. Tex. Feb. 13 2008).[1]    However, even that case recognizes that whether the payment of royalties is a condition precedent to the right to use the marks at issue depends in the first instance on the contract language.

---

[1] As noted below, the remainder of the cases HIG cites simply involved a termination, but do not stand for the proposition that a termination or suspension of the right to use a mark is impermissible based on a failure to pay royalties.

Based on this premise, HIG misleadingly asserts that the "Agreement is clear that the license granted to HIG for the use of the Branding Elements 'will commence on the date of the later signature on the License Summary and, unless otherwise terminated, will continue until the expiration of the last Contract Year . . . .'" HIG Opp. at 5 (citing Limited License Agreement ¶ 5.1 (emphasis omitted)).

This assertion is false and HIG's "quote" is misleading. Section 5.1 does not say "the license granted to HIG . . . will commence . . . and, unless otherwise terminated, will continue until the expiration of the last Contract Year' . . . '" Rather, it says the "<u>The Term of this Agreement will commence</u> . . . ." (emphasis added). Thus, contrary to what HIG would like the Court to believe, Section 5.1 does <u>not</u> address whether the payment of royalties is a condition precedent to the continued right of HIG to use the license.

However, Section 1.1 (unaddressed by HIG), entitled "Rights Granted," does address this issue. It provides:

> 1.1.1.  <u>Subject to the terms and conditions of this Agreement, Meredith grants Licensee the right</u>, during the Term, to reproduce and use the Branding Elements. . . . .

<u>Id.</u> (emphasis added). The words "subject to" mean in a contract that a party's duty to perform is conditioned.[2] Thus, the license grant to HIG and Meredith's permission for HIG to continue to use the Meredith Marks is <u>expressly</u> conditioned upon HIG's compliance with the terms and

---

[2]  <u>See, e.g.</u>, <u>Riess v. Murchison</u>, 329 F.2d 635, 643 (9th Cir. 1964) (meaning usually attributed "to words such as 'subject to' is that a promise so limited is conditional."); <u>Shared Imaging, Inc. v. Campbell Clinic, Inc.</u>, 994 F. Supp. 919, 924 (W.D. Tenn. 1998) ("[W]hen used in connection with contracts, these words ["subject to"] usually indicate a condition on a party's duty of performance"), <u>aff'd</u>, 173 F.3d 856 (6th Cir. 1999); 17 AM. JUR. 2D <i>Contracts</i> § 455 (2008 West) (the employment of words such as "'subject to' usually indicates that a promise is not to be performed except upon a condition").

3

conditions of the Agreement, including the provisions for payment of royalties. Id.; Johnson ¶ 16.

Moreover, in the case at hand, the Agreement provides that the failure to make a royalty payment is a material breach, which, in turn, entitles Plaintiff Meredith to the injunctive relief it now seeks. Specifically, as stated in Section G.3 of the License Summary portion of the Agreement:

> Without addressing the materiality of any other breach of this Agreement and for the sake of clarity, the parties understand that the failure to make the payments described above shall constitute a material breach of this Agreement.

Limited License Agreement (License Summary) ¶ G.3.[3] In fact, HIG concedes (as it must) that it is in material breach of the Agreement. HIG Opp. at n. 4 ("HIG is well aware that the Agreement at issue specifically defines a non-payment of royalties as a 'material breach.'").

Furthermore, Section 11 of the Terms and Conditions of the Agreement (which HIG wholly fails to address in its Opposition[4]) expressly provides:

---

[3] HIG also argues that "'absent an express provision in the agreement,'" a failure to make any royalty payments does not establish a material breach justifying termination of the contact. (HIG Opp. at 11, citing Arthur Guinness & Sons, Inc. v. Sterling Pub'g Co., 732 F.2d 1095 (2d Cir. 1984). This argument fails based on the above quoted contractual language that failure to pay the royalties constitutes "a material breach." Moreover, the quoted language from Arthur Guinness & Sons was made in connection with the question whether the licensor could terminate the agreement based on the licensee's withholding of only approximately $13,000 from a much larger overall royalty payment. The agreement allowed for termination if the licensee "willfully [broke] an important obligation of the agreement." Id. at 1098. Thus, in deciding whether the plaintiff was likely to succeed on the merits, the court needed to determine whether the licensee "willfully broke an important obligation in withholding some of the sums due" or whether "the quarrel was an honest disagreement concerning a relatively small sum." Id. at 1101 (emphasis added). In contrast, in this case, HIG has refused to pay any of the $1,000,000 minimum royalty payment due for the previous quarter – a material breach by any standard.

[4] Defendant HIG has, however, discussed at length Section 5.4 of the Agreement, which governs Plaintiff's right to terminate in the event of a material breach. There is nothing in this section (or anywhere else in the Agreement) that states that termination is Plaintiff's only option in the event of a material breach. Likewise, there is no language found in Section 11 which requires

> Licensee [HIG] agrees that Meredith will have no adequate remedy at law
> if Licensee breaches a material term of this Agreement. As such, Licensee
> agrees that, in addition to any other remedy available to Meredith,
> Meredith will have the right to have any such breach restrained by
> equitable relief.

Terms and Conditions ¶ 11 (emphasis added). Thus, the Agreement itself expressly states that

the failure to make the required royalty payments is a material breach, specifically entitling

Meredith to equitable relief as requested herein. There simply is no additional requirement that

the license be terminated as well, though HIG's entire Opposition to the requested relief is

constructed upon this fundamentally false premise.[5]  In sum, HIG's attempt to rewrite the

Limited License Agreement – in an effort to arrive at a conclusion which defies all common

sense – necessarily fails.

## 2.    Hornbook Contract Law.

Second, even without this contractual language, HIG's proposition that it can continue to

use the Meredith Marks without paying royalties is contrary to standard contract principles.

Contrary to HIG's Spectrum case, which did not acknowledge or address these principles, it is

hornbook contract law that a material failure to perform operates as a matter of law as the non-

satisfaction of a condition, excusing Meredith's future commitment to allow HIG to use its

trademarks:

> [I]t is a condition of each party's remaining duties to render performance to be
> exchanged under an exchange of promises that there be no uncured material
> failure by the other party to render any such performance due at an earlier time.

---

termination by Meredith before it may seek the injunctive relief that is contemplated. Indeed,
Section 11 recognizes that there are other remedies available, but does not condition any of them
on a termination of the Agreement.

[5] At the risk of stating the obvious, if HIG wanted to enjoy the privilege of using the Meredith
Marks even though it might materially breach the Agreement by refusing to pay the royalties
due, it could have proposed that these provisions be limited or, at a minimum, revised to provide
that injunctive relief would only be available after a formal termination.

5

Restatement Of Contracts (Second) § 237. See also Restatement (Second) of Contracts § 237
cmt. b (1981) ("[W]here performances are to be exchanged under an exchange of promises, each
party is entitled to the assurance that he will not be called upon to perform his remaining duties
of performance with respect to the expected exchange if there has already been an uncured
material failure of performance by the other party."). Courts in Iowa, whose law governs the
interpretation of this contract[6] (not Texas) have adopted the Restatement of Contracts and this
principle.[7]

In recognition of this principle as applied in the trademark context, numerous courts have
consistently held that a licensee cannot have it both ways by refusing to pay and then continue to
use the licensed mark. For example, in Donoghue v. IBC/USA (Publications), Inc., 886 F. Supp.
947 (D. Mass), aff'd, 70 F.3d 206 (1st Cir. 1995), cited in Meredith's initial brief, the Donoghue
defendant licensees argued that the plaintiff licensor violated the agreement between them, and
that thus the plaintiff was not entitled to injunctive relief. In rejecting this contention, the Court
held:

> While the plaintiff may have failed to comply with all of the terms of the
> [agreement], the defendants were not free to stop paying royalties. In a case
> similar in some respects to this one, the Third Circuit rejected the defendant's
> position that it could stop paying royalties and continue to use the plaintiff's
> name, because he thought that the plaintiff had violated the applicable
> contract. . . . The court stated: "Under basic contract principles, when one party
> to a contract feels that the other contracting party has breached its agreement, the
> non-breaching party may either stop performance and assume the contract is
> avoided, or continue its performance and sue for damages.    Under no

---

[6] See Limited License Agreement ¶ 11.

[7] See Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp., 266 N.W.2d 22, 29 (Iowa 1978)
(citing Restatement of Contracts (Second) § 262, now §237, in support of finding that a party's
"material and substantial" breach of sublease established the non-breaching party's defense
in breaching party's action against it); Kelly v. Iowa Mutual Ins. Co., 620 N.W.2d 637, 641
(Iowa 2000) ("It is a basic principle of contract law that once one party to a contract breaches the
agreement, the other party is no longer obligated to continue performing his or her own
contractual obligations.") (internal citation omitted).

6

circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits . . . . [U]se of the trademark under these circumstances amounts to infringement under the Lanham Act."

Donoghue, 886 F. Supp. at 954 (quoting S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d at 376) (emphasis added).

Similarly, in Ryan v. Volpone Stamp Co., Inc., 107 F. Supp.2d 369 (S.D.N.Y. 2000), as here, the licensee argued that the licensor, former baseball player Nolan Ryan, had violated the exclusivity provisions of the license agreement. On this basis, the licensee refused to pay royalties and argued that it should be free to continue to sell the merchandise bearing the licensed intellectual property. The court rejected this argument, explaining:

Defendant argues that Ryan breached the agreements, specifically by licensing his name to others in violation of the exclusivity provision and by failing to honor his obligation to protect [Defendant] against third party infringers, thereby justifying [Defendant's] refusal to continue to pay royalties. ... [A] party to a contract may respond to the other party's breach in one of two ways:  the non-breaching party may stop performance and sue for total breach, or continue to perform and sue for partial breach.  What the non-breaching party cannot do is avoid its obligations under the contract and yet continue to reap the benefits.

Id. at 397-398 (citations omitted) (emphasis added).[8]

In Romacorp, Inc. v. TR Acquisition Corp., No. 93 Civ. 5394 (MEL), 1993 WL 497969 (S.D.N.Y. Dec. 1, 1993), despite notice and the opportunity to cure, a licensee continued to operate under the licensed name and mark but refused to pay royalties. The licensee's action was based on the licensor's alleged failure to honor a geographic exclusivity provision of their agreement. The court entered an injunction against the further use of the plaintiff's trademarks, stating:

---

[8] Similarly, "the gross inequity of allowing [Defendant] to reap the benefits of doing business under the [Meredith Marks] without paying [its] share of the costs of those benefits pending the final outcome of this case" tips the balance of hardships in favor of Plaintiff Meredith. Constandi v. Aamco Automatic Transmissions, Inc., 456 F2d 941. 943 (9th Cir. 1972).

7

> The law is clear that even if [the licensee] established breaches by [the licensor], ... those breaches would not relieve [the licensee] of its obligation to pay franchise fees. ...
>
> [It] is against the law as well as sound morals to permit a party to a contract to repudiate the contract or his obligation under it, and the same time retain the consideration that he has received .... Defendant's counterclaims will, of course, be adjudicated in their own right; however, the alleged wrongs of plaintiff do not constitute affirmative defenses to defendant's non-payment of franchise fees.

Id. at *12 (citing McDonald's Corp. v. Robert A. Makin, Inc., 653 F. Supp. 401, 403 (W.D.N.Y. 1986); S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d at 375; Costandi v. Aamco Automatic Transmissions, Inc., 456 F. 2d 941, 942-43 (9th Cir. 1972); Burger King Corp. v. Majeed, 805 F. Supp. 994, 1003 (S.D. Fla. 1992); Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc., 796 F. Supp. 1026, 1034 (E.D. Mich. 1992); Cle-Ware Rayco, Inc. v. Perlstein, 401 F. Supp. 1231, 1234 (S.D.N.Y. 1975); Burger King Corp. v. Hall, 770 F. Supp. 633, 639 (S.D. Fla. 1971)). Accord Jet Blast, Inc. v. Hershey's Mill Indus. Servs., Inc., 32 U.S.P.Q.2d 1173, 1994 WL 220000 (E.D. Pa. 1994) (when defendant "failed to make payments" required by agreement, "defendant forfeited its right to use trade name").

This principle that a material failure to perform operates as a matter of law as the non-satisfaction of a condition does not (and logically could not) depend on whether the licensor has terminated the agreement. Indeed, HIG's claim that, in all these cases granting injunctive relief based on the failure to pay royalties, the licensor had terminated the licensee or the license had terminated, is simply false. HIG Opp. at 13. See, e.g., Donoghue v. IBC/USA Publications, Inc., 886 F. Supp. 947 (D. Mass.), aff'd, 70 F.3d 206 (1st Cir. 1995); Dunkin Donuts, Inc. v. Kashi Enterprises, Inc., 106 F. Supp. 2d 1325 (N.D. Ga. 2000); Dunkin Donuts, Inc. v. Albireh Donuts, Inc., 96 F. Supp. 2d 146 (N.D.N.Y. 2000).[9]  Significantly, even in those cases HIG cites where

---

[9]  Defendant argues that the cases cited by Meredith "do not dispute that proper termination of a valid license agreement is required before a finding of infringement." Opp. at 13. This is faulty

the license was terminated, it only shows that termination is <u>sufficient</u>, but not that it is <u>necessary</u>, to obtain injunctive relief.[10]

Defendant HIG would ask the Court to hold that Meredith only had two choices: (1) terminate the Agreement (though Meredith has at all times stood willing and able to perform) and then seek injunctive relief; or (2) continue to honor its obligations under the Agreement, but stand powerless to prevent HIG from using the Marks for as long as it wishes, while withholding payment for such use. Setting aside the fact that such an absurd result is contrary to the express language of the Agreement, the <u>Donoghue</u> court presented the proper choice to be made: Defendant HIG may continue to use the Meredith Marks, but be required to pay for that right, ***or***, if it stops paying royalties, it must also cease using the Meredith Marks. Most importantly,

---

logic. Clearly, the failure to dispute a supposed proposition that is not before the court, and contrary to basic contract law, is a far cry from adopting that principle.

[10]  The cases HIG cites are also factually distinguishable from the circumstances presented herein. For example, in <u>Luxottica Group S.p.A. v. Bausch & Lomb, Inc.</u>, 160 F. Supp. 2d 545 (S.D.N.Y. 2001), the issue was whether the licensor had given the licensee adequate notice and opportunity to cure before it terminated the license and sought relief. <u>Id.</u> at 550-551. Nowhere, however, does the court hold that termination is always a prerequisite to seeking injunctive relief. In <u>Papa John's Int'l, Inc. v. Dynamic Pizza, Inc.</u>, 317 F. Supp. 2d 740 (W.D. Ky. 2004) as well, nowhere does the court hold that termination is always a prerequisite to seeking injunctive relief. In that case, the plaintiff was alleging termination, which, in turn, under the agreement in issue, required notice. In the context of a motion for summary judgment, the court merely stated that there was no evidence that notice of termination was given, as required by the agreement, and it therefore could not find that the termination was effected. Similarly, in <u>Oleg Cassini, Inc. v. Couture Coordinates, Inc.</u>, 297 F. Supp. 821 (S.D.N.Y. 1969), the licensor was denied relief because it did not object to the lack of payment for over four months, thereby waiving its right to prompt payment. Moreover, when the licensor did give notice, it did not provide an opportunity for cure and when the licensee attempted to pay what was due, albeit with a check with a restrictive endorsement, the licensor was unwilling to give the licensee an opportunity to tender an unrestricted payment. In contrast, Plaintiff Meredith has properly provided Defendant with adequate notice and an opportunity to cure, and it is also ready and willing to accept payment of the monies it is owed.

9

"[u]nder no circumstances may the [licensee] stop performance and continue to take advantage of the contract's benefits." Id. at 954 (citing S & R Corp., 968 F. 2d at 376) (emphasis added).[11]

Finally, despite the clear contract language to the contrary, HIG argues that its continued use of the Meredith Marks is authorized because Meredith has continued to perform its obligations under the Agreement, such as continuing to provide a link to HIG's website on bhg.com. At the same time, HIG argues that Meredith has breached the Agreement because it was not including that link on bhg.com. Undoubtedly, however, if Meredith were to cease performing its other obligations under the Agreement, HIG would promptly claim that Plaintiff Meredith is in breach and therefore not entitled to relief. This argument is akin to telling Meredith, "Heads you lose, tails you lose." Put simply, Meredith should not be denied the ability to prevent the continued unauthorized use of its Marks simply because it continues in good faith to meet its own obligations under the Agreement. To hold otherwise would turn the fundamental principles of equity and fairness upside down. The Court should not allow Meredith's compliance with the Agreement to be used to defeat its claim for an injunction arising from HIG's willful breach of the Limited License Agreement.

### B.    HIG Has Already Agreed That Meredith Will Suffer Irreparable Injury By Virtue Of Its Failure To Pay The Royalties.

Defendant HIG argued that Plaintiff Meredith has not and will not suffer irreparable injury as a result of HIG's continued use of the Meredith Marks without payment of the royalties that are due. This is but another attempt to rewrite the agreement that induced Meredith to license the marks to HIG in the first place. It flies in the face of HIG's agreement that that "the

---

[11]    Defendant HIG argues that Donoghue should be ignored because, in S & R Corp., a case that Donoghue cites, the plaintiff had terminated the agreement. To the contrary, while the facts were different in S & R Corp., the fact that Donoghue reached same conclusion by applying the correct principle, in fact, reinforces that it is irrelevant whether Plaintiff Meredith terminated the Agreement with HIG.

failure to make the payments described above shall constitute a material breach of this Agreement" (Limited License Agreement (License Summary) ¶ G.3) and HIG's agreement that "Meredith will have no adequate remedy at law if Licensee breaches a material term of this Agreement."

Other than to cite to a treatise on equity jurisprudence for a general proposition that governs only in situations where there is no agreement between the parties to the contrary (Opp. at 24), HIG has failed to offer any reason why it should be permitted to avoid the effect of yet another provision of an Agreement to which it freely agreed to in the first instance. See Sunstar, Inc. v. Alberto-Culver Co., Nos. 01 C 736, 01 C 5825, 2007 WL 2410069, at *6 (N.D. Ill. Aug. 22, 2007) (unauthorized use of trademark "caused Alberto to suffer irreparable harm for which there is no adequate legal remedy, according to *both* trademark law *and the parties' agreements*," which provided that "a breach will result in irreparable injury for which there is no adequate remedy at law . . . .") (emphasis added). Indeed, Meredith would not have agreed to license the Meredith Marks to HIG in the first instance had HIG not agreed to these provisions. Under these circumstances, HIG is estopped from arguing that there is no irreparable harm.[12]

Moreover, as Meredith established in its initial Memorandum, this Court has long applied a presumption of irreparable injury where a plaintiff proves a likelihood of success on a trademark claim. See, e.g., The Appleseed Foundation, Inc. v. Appleseed Institute, Inc., 981

---

[12]   See *In re* Hagel P'ship Ltd., 40 B.R. 821, 824-825 (Bankr. D.C. 1984) ("Even if [movants] were to make such an argument, this Court would reject it, on the ground that the movants are bound by the terms they agreed to when they sold the property to the debtor, and on the further ground that they are estopped to change those terms now, having gained the benefit of a sale at what was no doubt a top price."); Custom Energy, LLC v. Liebert Corp., No. Civ. A. 98-2077-GTV, Civ. A. 99-2055-GTV, 2000 WL 876905, at *3 (D. Kan. June 12, 2000) ("American courts have traditionally taken the view that competent parties may make contracts on their own terms provided such contracts are neither illegal nor contrary to public policy, and in the absence of fraud, mistake or duress a party who has entered into such a contract is bound thereby.") (internal citation omitted).

F. Supp. 672, 677 (D.D.C. 1997). See also Malarkey-Taylor Associates, Inc. v. Cellular Telecommunications Industry Association, 929 F. Supp. at 473, 478 (D.D.C. 1996) (citing Crime Control, Inc. v. Crime Control, Inc., 624 F. Supp. 579, 581 (D.D.C. 1984)). "Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm." Sears, Roebuck & Co. v. Sears Fin. Network, 576 F. Supp. 857, 864 (D.D.C. 1983).[13]

HIG does not dispute this black letter law, but suggests that this Court ignore decades of established case law in this District on the basis that, following the Supreme Court's ruling in a patent case, "certain lower courts" have openly "questioned" the continuing validity of that presumption. Regardless of whether that is true, the fact remains that no court has yet overruled a case applying the presumption. Indeed, the presumption continues to be applied in both circuit courts and district courts around the country. See, e.g., Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007) (holding that "irreparable injury is ordinarily presumed upon a showing of a likelihood of success" in trademark cases); Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377 (6th Cir. 2006) (same); Wonder Works v. Cranium, Inc., 455 F.Supp.2d 453, 457 (D.S.C. 2006). Moreover, this court may not disregard long-standing precedent absent a ruling by the Court of Appeals for the District of Columbia Circuit or the Supreme Court. U.S. v. Torres, 115 F. 3d 1033, 1036 (D.C. Cir. 1997). Tellingly, HIG cites no such cases.

In addition, contrary to Defendant's argument, Plaintiff Meredith does not rely solely on the presumption of irreparable injury. Clearly, Defendant HIG does not view itself as bound by

---

[13] Accord Partido Revolucionario Dominicano, 312 F. Supp. 2d at 15 ("Trademark infringement 'by its very nature causes irreparable injury.'") (citation omitted); Appleseed Found. Inc., 981 F. Supp. at 677 (same); Basile v. Basile S.P.A., Civ. A. No. 86-3433, 1988 WL 93110, at *3 (D.D.C. Aug. 29, 1988) ("'Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm.'") (citation omitted).

12

the Agreement and therefore is operating outside of any control by Plaintiff Meredith. "Lack of control amounts to irreparable injury, even if the licensee is meeting quality control requirements or, indeed, producing licensed products that exceed the licensor's own standards." S & R Corp., 968 F. 2d at 378; Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 195-96 (3d Cir. 1990).

Finally, approximately ten years remain under the Agreement. Unless HIG is enjoined from making further sales, HIG would require Meredith to bring a succession of claims for monetary damages. The law does not require this and therefore an award of damages would not be sufficient for this reason as well. See, e.g., I.C. Marketing, Inc., v. Amos Press, Inc., 147 Fed. Appx. 671, 673 (9th Cir. 2005); Lynch Corp. v. Omaha Nat'l Bank, 666 F.2d 1208, 1212 (8th Cir. 1981).

## C.    An Injunction Prohibiting HIG From Using The Meredith Marks Would Not Substantially Injure HIG Because It Can Continue To Operate Its Business.

HIG asserts that the injunctive relief Meredith has requested would be too costly. However, under the case law in this district, the issuance of an injunction will not substantially harm a defendant if it "will be able to continue to operate [its] business, though not under" the trademarks at issue. Sears, 576 F. Supp. at 864. Further, HIG may easily avoid the necessity of an injunction altogether, by simply tendering the royalty payments to which it previously agreed. Other than unsupported conclusory statements scattered in the last two pages of the Gustafson Declaration, there is no evidence as to the financial impact of Meredith's requested relief on HIG's ability to continue to operate.

Indeed, HIG simply ignores the fact that it markets numerous products that it has not branded with the Meredith Marks. Moreover, nothing prevents HIG from selling unbranded products in the categories previously branded with the Meredith Marks, or selling its products

13

branded by another mark. Johnson Decl. ¶ 44. There is simply no reason HIG cannot continue to operate, particularly since as it admits in the Gustafson Declaration, the Branding Elements "represent 9.4 % of the total revenues from all products in the Summer Quarterly." Gustafson Decl. ¶ 72. Moreover, HIG has been curtailing the scope of its use of the Meredith Marks, indicating its lack of dependence on those Marks.

In any event, Meredith is prepared to modify its injunctive request as set forth in the attached revised proposed order. Meredith believes that its modified proposal, which does not require return of the catalogues or branded merchandise to Meredith at this time, eliminates any conceivable argument that the balance of the equities favors HIG.[14]

### D.    The Public Interest Favors An Injunction.

Finally, the public interest favors the issuance of an injunction. Defendant HIG's contention that this element is not met is based on the fact that Meredith continues to abide by its contract with HIG and continues to provides a link to the HIG website. The modified proposed

---

[14]    Contrary to Defendant's assertion (Opp. at 25-26), the "first sale" doctrine does not bar Meredith's claim for relief. The essence of the doctrine is that, after the first sale of branded merchandise, with certain well defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition. Consequently, a distributor does not need a license to use the mark on the goods, as long as the goods are genuine and have not been altered or changed. 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25.41 at 25-106-25-107(4th ed. 2008). Accord Luxottica Group S.p.A. v. Bausch & Lomb, Inc., 160 F. Supp. 2d at 552. The doctrine is inapplicable to the instant matter because Meredith has not sold any goods to HIG. Thus, the present situation is unlike the one presented in the Luxottica case relied on by Defendant, in which the plaintiff trademark owner had sold its inventory of sunglasses to the defendant. Id.. 160 F. Supp. 545 at 551-552. Moreover, as recognized in Luxottica Group, the doctrine only applies where the trademark owner has not placed any restrictions on the buyer. Id. In this case, as discussed above, Plaintiff conditioned Defendant's use of the Meredith Marks upon payment of royalties. As further recognized by the other case relied on by Defendant, where, as here, goods are being sold without the trademark owner's authorization, they are simply not "genuine goods." Rogers v. HSN Direct Joint Venture, No. 97 CIV. 7710 (LLS) 1999 WL 728651 at *2 (S.D.N.Y. Sept. 17, 1999) (first sale doctrine inapplicable where trademark owner revoked the authorization to sell goods under the license).

14

injunction order would permit Meredith to discontinue such link during the pendency of the injunction. If HIG objects and the Court declines to permit Meredith to discontinue the link, then HIG in any event should be precluded from using the Meredith Marks on any products on the website. Meredith should not be required to breach its Agreement to obtain an injunction.

## CONCLUSION

For the reasons set forth above, this Court should issue an order enjoining Defendant HIG from making any further use of the Meredith Marks, including any sale or promotion of products under or in association with those marks.

Respectfully submitted,

Of Counsel

James G. Sawtelle            by MDH

Michael D. Hays (D.C. Bar No. 932418)
Mitchell H. Stabbe (D.C. Bar No. 333427)

Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414
Telephone: (303) 447-778
Facsimile: (303) 447-7800
jsawtelle@faegre.com

Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.  Ste 800
Washington, D.C.  20036-6802
Telephone: (202) 776-2000
Facsimile: (202) 776-2222
mhays@dowlohnes.com
mstabbe@dowlohnes.com

Counsel for Plaintiff Meredith Corporation

April 11, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Memorandum Of Points And Authorities In Reply To Defendant's Opposition To Plaintiff Meredith Corporation's Motion For A Preliminary Injunction," proposed order, and "Supplemental Declaration of David S. Johnson" were served on the following persons, at their said address, by electronic mail and by first class mail, this 11th day of April, 2008:

Martin Lobel, Esq. (lobel@lnllaw.com)
Lee Ellen Helfrich, Esq. (helfrich@lnllaw.com)
Lobel, Novins & Lamont, LLP
888 17th St., N.W.
Suite 810
Washington, DC 20006

Scott M. Dewolf, Esq. (sdewolf@rhmlawyers.com)
Kathleen M. Patrick, Esq. (kpatrick@rhmlawyers.com)
Rochelle, Hutcheson & McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201

Michael D. Hays

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MEREDITH CORPORATION,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　)　　　Case No. 1:08-cv-00257 - RBW
　　　　　　　　　　　　　　　　　　　)
HOME INTERIORS & GIFTS, INC.,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

**SUPPLEMENTAL DECLARATION OF DAVID S. JOHNSON IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

David S. Johnson, being duly sworn, declares and says:

1.　　　I am the Vice President, Brand Licensing, of Plaintiff Meredith Corporation ("Meredith"). I am making this Supplemental Declaration in support of Meredith's Motion for a Preliminary Injunction against Defendant Home Interiors & Gifts, Inc. ("HIG"). The statements contained herein supplement those set forth in my Declaration dated April 1, 2008.

2.　　　I have reviewed the Response in Opposition to Meredith Corporation's Motion for Preliminary Injunction, filed by HIG in the above matter. There are several issues raised in this document that warrant a reply.

3.　　　First, HIG seems to suggest that Meredith only recently began posting a link to HIG's website on the BETTER HOMES AND GARDENS® website (www.bhg.com). This is not accurate.

4.　　　As I stated in my prior Declaration, HIG previously claimed to be excused from making royalty payments under the parties' Agreement, due to Meredith's alleged failure to

provide "a link to Home Interiors' website on *www.bhg.com*." In fact, Meredith has provided this link in accordance with the parties' Agreement for years. Any suggestion by HIG that the BETTER HOMES AND GARDENS® website has only recently been changed by Meredith to add this link is simply untrue.

5.    Next, HIG urges that it should be allowed to continue using the Meredith marks without payment, because Meredith has continued to honor the terms of the parties' separate printing contract even after HIG breached the subject Agreement. In this regard, HIG argues that, "If Meredith truly believed HIG's use of the Branding Elements was unauthorized, it certainly should not have acquiesced in the publishing of [HIG's] catalog . . . ."

6.    In fact, since HIG has been in material breach of the parties Agreement, Meredith has made it clear that any approval of the use of the Meredith Marks was expressly conditioned upon and subject to HIG compliance with the terms and conditions of the subject Agreement.

7.    Ms. Gustafson's Declaration with respect to Meredith's provision of approvals and Exhibit 1 of her Declaration omit the cover email or letter that transmitted such approval. Shortly after HIG's default in payment this year, Meredith has provided approvals in accordance with its obligations under the Agreement with the following statement:

> **Each and any approval provided by Meredith with respect to use of the Branding Elements is at all times conditioned upon HIG's compliance with the June 8, 2003 Strategic Alliance (as amended) including payment and reporting obligations. No such approval in any way constitutes a waiver by Meredith of any rights, including any right to seek injunctive relief, or any claims Meredith may have upon HIG's breach of its obligations. HIG proceeds at its own risk if it elects to continue using any of the Branding Elements, including any BETTER HOMES AND GARDENS® marks, without HIG's compliance with its obligations under the Agreement.**

8.    Finally, with respect to HIG's contention that Meredith has not suffered irreparable harm, in the heavily negotiated Limited License Agreement, HIG specifically agreed as follows:

2

> Without addressing the materiality of any other breach of this Agreement and for the sake of clarity, the parties understand that <u>the failure to make the payments described above shall constitute a material breach of this Agreement</u>.

Limited License Agreement (License Summary) ¶ G.3 (emphasis added). Furthermore, Section 11 of the Terms and Conditions of the Agreement expressly provides:

> <u>Licensee [HIG] agrees that Meredith will have no adequate remedy at law if Licensee breaches a material term of this Agreement</u>. As such, Licensee agrees that, in addition to any other remedy available to Meredith, Meredith will have the right to have any such breach restrained by equitable relief.

Terms and Conditions ¶ 11 (emphasis added).

9.     Meredith would not have agreed to license the Meredith Marks to HIG without these clauses, and Meredith relied upon these clauses in agreeing to enter into the Limited License Agreement.

10.     Further the declarant sayeth not.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 11th day of April 2008.

_____
David Johnson

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br><br>MEREDITH CORPORATION, )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>HOME INTERIORS & GIFTS, INC., )<br> )<br> Defendant. )<br>_____) | Case No. 1:08-cv-00257 RBW |

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Upon consideration of the Motion for Preliminary Injunction of Plaintiff Meredith Corporation ("Meredith") against Defendant Home Interiors & Gifts, Inc. ("HIG"), the memoranda of points and authorities in support thereof and in opposition thereto, and the declarations and other evidence before the Court, the Court having found that Plaintiff Meredith has established that (1) it has a substantial likelihood of success on the merits on its Lanham Act claims; (2) Plaintiff Meredith will suffer irreparable injury in the absence of a preliminary injunction; (3) Defendant HIG will not be substantially harmed if the injunction is entered; and (4) the public interest favors the entry of the injunction, that it is, this \_\_\_\_ day of _____, 2008,

ORDERED, that the Motion for Preliminary Injunction be and hereby is GRANTED; and it s further

ORDERED that Defendant HIG, its officers, agents, servants, affiliates, employees, attorneys, and representatives and all those in privity or acting in concert with

Defendant HIG, and each and all of them, be, and hereby are, enjoined and restrained from directly or indirectly:

(a)    using BETTER HOMES AND GARDENS, as a part of a trademark, service mark, or trade name alone or in combination with any words, names, designs, titles, or marks in connection with selling, offering, or advertising home decorative products or any other goods or services;

(b)    using BETTER HOMES AND GARDENS as part of a trademark, service mark, or trade name, or using any other mark or name confusingly similar to BETTER HOMES AND GARDENS, in connection with any business which Defendant HIG conducts, owns, or controls;

(c)    holding itself out as the owner of, or a company authorized to use, as part of its name, BETTER HOMES AND GARDENS, or a name confusingly similar thereto;

(d)    using a plaid checkerboard design, as a part of a trademark or service mark alone or in combination with any words, names, designs, titles, or marks in connection with selling, offering, or advertising home decorative products or any other goods or services;

(e)    using a plaid checkerboard design as part of a trademark or service mark, or any other mark confusingly similar to a plaid checkerboard design, in connection with any business which Defendant HIG conducts, owns, or controls;

(f)    performing any actions or using any words, names, styles, titles, or marks that are likely to cause confusion, to cause mistake or to deceive; or to otherwise mislead the trade or the public into believing that Plaintiff Meredith and Defendant HIG are one and the same or are in some way connected; or that Plaintiff Meredith is a sponsor of Defendant HIG; or that Defendant HIG is in some manner affiliated or associated with or under the supervision or

control of Plaintiff Meredith; or that the home decorative products or other goods or services of Defendant HIG originate with Plaintiff Meredith or are sold, promoted, or offered with the approval, consent, or authorization, or under the supervision of Plaintiff Meredith; or are likely in any way to lead the trade or the public to associate Defendant HIG with Plaintiff Meredith;

(g)     using any words, names, styles, titles, or marks which create a likelihood of injury to the business reputation of Plaintiff Meredith, or a likelihood of misappropriation or dilution of Plaintiff's BETTER HOMES AND GARDENS mark or Plaintiff's plaid checkerboard design mark and the goodwill associated therewith;

(h)     using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and the goodwill attached thereto; and

(i)     distributing all home decorative products, catalogs, stationery, business forms, signs, advertisements, brochures, promotional materials, and other written materials which bear the infringing name or trademark BETTER HOMES AND GARDENS or the plaid checkerboard design or any name, mark, or design confusingly similar to Plaintiff's BETTER HOMES AND GARDENS mark or plaid checkerboard design mark; and

IT IS FURTHER ORDERED that, Meredith may discontinue the link to HIG's website on bhg.com; and

IT IS FURTHER ORDERED that, this order shall become effective upon the posting by Plaintiff Meredith of an injunction bond in the amount of $10,000.

IT IS SO ORDERED

_____
Honorable Reggie B. Walton
UNITED STATES DISTRICT JUDGE

Copies to:

Michael D. Hays, Esq. (mhays@dowlohnes.com)
Mitchell H. Stabbe, Esq. (mstabbe@dowlohnes.com)
Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, D.C.  20036-6 802

James G. Sawtelle (jsawtelle@faegre.com)
Faegre & Benson, LLP
1900 Fifteenth Street
Boulder, CO 80302-5414

Martin Lobel, Esq. (lobel@lnllaw.com)
Lee Ellen Helfrich, Esq. (helfrich@lnllaw.com)
Lobel, Novins & Lamont, LLP
888 17th St., N.W.
Suite 810
Washington, DC  20006

Scott M. Dewolf, Esq. (sdewolf@rhmlawyers.com)
Kathleen M. Patrick, Esq. (kpatrick@rhmlawyers.com)
Rochelle, Hutcheson & McCullough, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas  75201